UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SONYA NORTON,

             Plaintiff,

    v.

LVNV FUNDING, LLC, et al.,

             Defendants.

Case No.  18-cv-05051-DMR

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTION TO DISMISS**

Re: Dkt. No. 37

Plaintiff Sonya Norton filed this putative class action against Defendants LVNV Funding, LLC ("LVNV") and Law Office of Harris & Zide ("H&Z") alleging violations of the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and California's Fair Debt Collection Practices Act ("Rosenthal Act"), California Civil Code § 1788 *et seq.*  Norton also seeks injunctive relief under California's Unfair Competition Law ("UCL"), California Business and Professions Code § 17200 *et seq.*  Defendants now move to dismiss Norton's second amended complaint (Docket No. 33, "SAC") under Federal Rule of Civil Procedure 12(b)(6).  [Docket Nos. 37 ("Mot."), 43 ("Reply")].  Norton timely opposed.  [Docket No. 38 ("Opp.").]  Having considered the parties' submissions and oral argument, and for the reasons detailed below, the court grants Defendants' motion in part and denies it in part.

I.      **BACKGROUND**

    **A.      Factual Background**

On October 21, 2008, non-party Arrow Financial Services, LLC ("Arrow") filed a collections action against Norton in San Mateo County Superior Court, alleging that Norton failed to tender owed amounts to Arrow.  *See* SAC ¶ 14.  On December 26, 2008, the state court entered a default judgment against Norton in the amount of $3,986.60.  *Id.* ¶ 15.

On February 24, 2012, H&Z filed a substitution of counsel to appear on behalf of Arrow in

United States District Court
Northern District of California

the state court action.  SAC ¶ 16; *Id.*, Ex. 2.  On May 17, 2012, H&Z caused a writ of execution to issue from a state court in the amount of $5,853.07.  SAC ¶ 17.  Norton's wages were garnished in the amount of $323.55 in August and September 2012.  *Id*.  Thereafter, Defendants sought and obtained a total of six writs of execution between December 27, 2013 and September 1, 2017.  *Id.* ¶¶ 17-25.  On November 29, 2017, Norton filed a claim of exemption in response to the garnishment of her wages.  *Id*. at ¶ 26. Through December 2017, Defendants allegedly garnished over $1,000 from Norton's paycheck.  *Id*. at ¶¶ 27-28.  On December 15, 2017, an attorney at Housing and Economic Rights Advocates ("HERA") wrote a letter to H&Z on Norton's behalf stating that the wage garnishment appeared to be improper because, unbeknownst to Norton, Arrow had filed a Certificate of Cancellation with the California Secretary of State back in October 10, 2012.  *Id.* ¶ 18; *Id.*, Ex. 3.  No other party had established itself as Arrow's assignee of record. *Id.* ¶ 33. H&Z subsequently filed a notice terminating the garnishment of Norton's wages. *Id*. at ¶ 31. Norton was "reimbursed some, but not all" of her garnished wages.  *Id*. at ¶ 35.

On February 13, 2018, an H&Z attorney informed Norton's attorney at HERA that H&Z represented LVNV rather than Arrow.  SAC at ¶ 36.  According to Norton, LVNV had acquired the judgment against her from Arrow in 2012 but did not disclose this fact to the state court or to Norton until 2018.  *Id*. at ¶¶ 37-39.  On May 11, 2018, Norton, through her current counsel, filed a motion in the state court action to quash the prior writs of execution.  *Id*. at ¶ 40.  On June 29, 2018, the court granted the unopposed motion on the grounds that "no acknowledgment of assignment of judgment has been filed as required by Code of Civil Procedure § 673."  *Id*.  On September 7, 2018, H&Z filed an Acknowledgment of Assignment of Judgment in the state court action pursuant to California Code of Civil Procedure § 673; it acknowledges the assignment of the judgment against Norton from Arrow to LVNV. [Docket No. 37-1 ("Def. RJN"), Ex. B. ("Acknowledgement").]

In this lawsuit, Norton contends that Defendants were prohibited from taking judicial action to enforce the judgment without first complying with section 673.  Based on this allegation, the SAC asserts individual and class claims under sections 1692e, 1692e(2)(A),1692e(5), 1692e(10), 1692f and 1692f(1) of the FDCPA, section 1788.13(e) and 1788.17 of the Rosenthal Act, and the UCL.  *See* SAC ¶¶ 56-76.  Norton seeks to represent a class that the SAC defines as all California residents

against whom:

> LVNV, represented by [H&Z], took judicial action (including obtaining Writs of Execution, wage garnishment, and bank levy) after October 10, 2012 and within four years [*sic*] the filing date of this action, to collect a judgment based on a consumer debt obtained in a California court; Arrow was the plaintiff of record at the time the judgment was entered; and LVNV did not file an Assignment of Judgment in conformity with [section 673].

*Id.* at ¶¶ 44-46.  The proposed subclass "consists of all members of the Class, where the judicial action was taken within one year of [the] filing of this action."  *Id.*  ¶ 46.

The SAC alleges that Defendants' practices of enforcing judgments without complying with section 673 "present a continuing threat to [Norton], the Class and members of the public in that on information and belief Defendants persist and continue to engage in these practices, and will not cease doing so unless and until forced to do so by this Court."  SAC at ¶ 70.  The SAC seeks actual and statutory damages, and attorneys' fees and costs on behalf of Norton and the putative class.  *Id.* at 14-15.  The SAC also seeks restitution by Defendants for money obtained from the class and subclass as a result of the unlawful collection activities, and an order enjoining Defendants from future use of unfair or deceptive acts.  *Id.* at 15.

### B.    Procedural Background

Defendants filed a motion to dismiss Norton's first amended complaint on October 12, 2018. [Docket No. 12.]  The court held a hearing on February 14, 2019.  Ruling from the bench, the court granted in part Defendants' motion to dismiss, specifically on the basis that Norton had failed to adequately allege that her debt constituted a "consumer debt" under the FDCPA and Rosenthal Act. *See* Docket No. 32, Transcript of hearing held February 14, 2019 ("Tr.").  Norton was granted leave to amend in order to address the deficiencies identified on the record, and she filed the SAC on March 18, 2019.  Defendants then filed this second motion to dismiss.

## II.    LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint.  *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per

curiam) (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted).  A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).  In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

## III.   REQUESTS FOR JUDICIAL NOTICE

Both parties filed a Request for Judicial Notice ("RJN").  As a general rule, a court may not consider "any material beyond the pleadings" when ruling on a Rule 12(b)(6) motion. *Lee*, 250 F.3d at 688 (citation and quotation marks omitted). However, "a court may take judicial notice of 'matters of public record,'" *id.* at 689 (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith*, 307 F.3d at 1121. The court need not accept as true allegations that contradict facts which may be judicially noticed. *See Mullis v. U.S. Bankr. Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987).

### A.   Plaintiff's RJN

Plaintiff requests that the court take judicial notice of the complaint filed on October 21, 2008 in the matter of *Arrow Financial Services v. Sonya Norton*, San Mateo County Superior Court Case No. CLJ477648.  [Docket No. 39.]  While a court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue," the court did not rely on or reference the complaint in the underlying collections

United States District Court
Northern District of California

case in order to rule on this motion.  *See U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo*, *Inc.*, 971 F.2d 244, 248 (9th Cir. 1992).  Accordingly, Plaintiff's RJN is denied as moot.

### B.     Defendants' RJN

Defendants' RJN asks the court to take judicial notice of three documents: (1) a copy of the transcript from the hearing held in this case on February 14, 2019; (2) a filed copy of the September 7, 2018 Acknowledgment that was filed in the San Mateo County Superior Court action; and (3) a copy of the online docket for that action.  Def. RJN at 1.

As for the first document, "[i]t is . . . well established that a court can take judicial notice of its own files and records under Rule 201 of the Federal Rules of Evidence." *Centurion Med. Liab. Protective Risk Retention Grp. Inc. v. Gonzalez*, 296 F. Supp. 3d 1212, 1216 (C.D. Cal. 2017).  Accordingly, the court takes judicial notice of the February 14, 2019 transcript. The other exhibits are part of the state court action, which can be judicially noticed as proceedings in other courts.  *See Borneo*, 971 F.2d at 248.  Therefore, the court takes judicial notice of these three documents.  Defendants' RJN is granted.

## IV.     ANALYSIS

Defendants make three arguments that the SAC fails to state a claim under Rule 12(b)(6). First, they assert that Norton continues to fail to adequately allege that the debt at issue is a "consumer debt" under the FDCPA and Rosenthal Act.  Second, Defendants contend that all of Norton's claims are untimely.  Third, Defendants argue that Norton lacks standing to pursue injunctive relief on behalf of herself and the putative class because she cannot show that it is reasonably likely that she will be wronged by the same alleged unlawful conduct again.

### A.     "Debts" Under the FDCPA and Rosenthal Act

"Because not all obligations to pay are considered debts under the FDCPA, a threshold issue in a suit brought under the Act is whether or not the dispute involves a 'debt' within the meaning of the statute." *Turner v. Cook*, 362 F.3d 1219, 1226–27 (9th Cir. 2004).  The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been

United States District Court
Northern District of California

reduced to judgment."  15 U.S.C. § 1692(a)(5).  The statute "is limited in its reach 'to those obligations to pay arising from consensual transactions, where parties negotiate or contract for consumer-related goods or services.'"  *Turner*, 362 F.3d at 1227 (quoting *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1326 (7th Cir. 1997), as the articulation of the "consensus judicial interpretation").  Similarly, the Rosenthal Act defines a "consumer debt" as "money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction," where a "consumer credit transaction" is defined as "a transaction between a natural person and another person in which property, services or money is acquired on credit by that natural person from such other person primarily for personal, family, or household purposes."  Cal. Civ. Code § 1788.2(f), (e).

In her prior complaint, Norton did not state any facts about the nature of her debt.[1]  Norton now alleges that in late 2017 she called H&Z and spoke with an unidentified person who told her that the reason she had been sued was "for a credit card."  SAC ¶ 29.  Norton further alleges that Defendants listed an entity called "Washington Mutual Card Services" as potentially having "discoverable information that Defendants may rely upon in connection with their claims and defenses in this action."  *Id.*  Norton states that Defendants "have refused to provide any further information about the debt they sought to collect from Ms. Norton," including which entity originally issued the credit card, and "whether the card was a Visa, Mastercard, or store brand card."  *Id.*  She avers that every credit card she has ever had was used "primarily to purchase items for personal, family or household use, such as clothes, food, gasoline, entertainment and other personal items," and that she has never operated a business or held a business credit card.  *Id.* ¶ 30.  Accordingly, Norton alleges "based on information and belief, that the debt for which she was sued in [the state court action] was based on a credit card used primarily for personal, family or household use, such as clothes, food, gasoline, entertainment and other personal items."  *Id.* ¶ 31.

It is clear from the SAC that Norton currently does not have concrete information about the

---

[1]  As the court noted at the February 14, 2019 hearing on Defendants' first motion to dismiss, Norton did not allege anything about the nature of her own debt, but instead attempted to bootstrap the issue by alleging that she sought to represent a class of individuals who were subject to collection for consumer debt.  Tr. 9:6-11.

debt. This is not surprising given the passage of time since it was incurred. Although Norton's allegations do not nail down the existence of a consumer debt, they create a plausible inference that the debt was incurred for personal, family, or household expenses, and therefore are sufficient to withstand a Rule 12 challenge. *See Iqbal*, 556 U.S. at 67 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *Twombly*, 550 U.S. at 556 ("Asking for plausible grounds [for relief] does not impose a probability requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence [supporting the claim].").

Defendants attempt to paint Norton's allegations as evasive and misleading by pointing out that she never unequivocally states that the judgment at issue resulted from credit card debt that she in fact accrued. Mot. at 9-10. They further claim that her statements about her general credit card use are insufficient to plead that the transactions underlying this particular judgment qualify as a "debt" within the meaning of the FDCPA and the Rosenthal Act. *Id.* at 10. Finally, they argue that it is irrelevant that "an unidentified person from H&Z allegedly told Norton that the judgment relates to a credit card," because the only relevant inquiry is "how the debtor used the funds, **not** on how the collector subsequently treated the obligation." *Id.* at 8 (emphasis in original).

The cases cited by Defendants are readily distinguishable. In *Sayeed v. Cheatham Farms Master Homeowners' Ass'n*, No. 18-cv-2073-PA, 2018 WL 4297480 (C.D. Cal. Sept. 7, 2018), the plaintiffs knew that their underlying debt related to delinquent homeowners' association dues. 2018 WL 4297480, at *1. The complaint alleged that the plaintiffs lived exclusively in Los Angeles, and that the delinquent dues were incurred for a rental property in Arizona. Given that the allegations indicated that the plaintiffs used the Arizona property for rental income rather than as a primary residence, the court concluded that the plaintiffs' cursory allegation that the debt was a "consumer debt" was insufficient to overcome the contrary inference that appeared on the face of the complaint. *Id.* at 2. No such contrary inferences appear in Norton's SAC.

In *Popa v. Winn Law Grp., APC*, No. 17-cv-6804-DSF, 2017 WL 6016567 (C.D. Cal. Dec. 4, 2017), the plaintiff "include[d] no information about the debt at issue" and merely referenced the

word "consumer" in his class action FDCPA claim.  2017 WL 6016567, at *2.  The allegations in *Middleton v. Cavalry Portfolio Servs., LLC*, No. 16-cv-01760-MMD, 2017 WL 969182 (D. Nev. Mar. 13, 2017) were similarly facially deficient.  There, the plaintiff alleged that the debt at issue arose from a credit card account but failed to assert that the credit card was used primarily for personal, family, or household purposes.  2017 WL 969182, at *3.  In sum, none of Defendants' cases analyzed allegations that are analogous to those in Norton's SAC.

Finally, contrary to Defendants' argument, Norton's allegations that describe her communications with H&Z are not offered to show that H&Z treated the debt as a consumer debt. Instead, they are factual support for the inference that her debt obligation arose from a delinquent credit card.  Defendants' authorities are, again, readily distinguishable.  *See* Mot. at 8 (citing *Bloom v. I.C. Sys. Inc.*, 972 F.2d 1067, 1068) (9th Cir. 1992) and *Slenk v. Transworld Sys., Inc.*, 236 F.3d 1072, 1076 (9th Cir. 2001)).  In *Bloom*, it was undisputed that the plaintiff used the funds at issue to invest in a software company.  972 F.2d at 1068-69.  The court determined that it was irrelevant that the loan was a personal loan from a friend, since the "end use" of the debt was commercial in nature.  *Id.* at 1068-69.  In *Slenk*, the plaintiff argued that even if his loan was commercial in nature, the defendant "transformed the loan into a consumer debt by contacting him at home."  236 F.3d at 1076.  The court rejected the argument, stating that "[w]e . . . refuse to ignore Congress's intent by defining a consumer debt in accordance with the actions of the debt collector, rather than the true nature of the debt."  *Id.*  In this case, Norton is not alleging that the debt at issue is a consumer debt because H&Z treated it that way.  Rather, she contends that the information that she has about the nature of the debt, some of which came from H&Z, supports a plausible inference that the debt was incurred for personal use.

Defendants essentially argue that a plaintiff's allegations about consumer debt must be unequivocal and ironclad in order to withstand a Rule 12 challenge.  This ignores well-established pleading standards.  Moreover, adopting such a position could incentivize creditors to conceal the nature of the debts they are attempting to collect in order to prevent debtors from discovering sufficient factual information to adequately contest unfair debt collection practices.  Given that consumers may have more than one delinquent debt and that many debts are sold and resold through

United States District Court
Northern District of California

8

various collection agencies, it would be antithetical to the purposes of the FDCPA and Rosenthal Act to prohibit debtors from contesting unlawful debt collection practices if they are unable to unequivocally identify the underlying debt after diligent investigation. "In enacting the FDCPA, Congress sought to counter the abusive, deceptive and unfair debt collection practices sometimes used by debt collectors against consumers." *Turner*, 362 F.3d at 1226. "[W]e seek to ensure that even the least sophisticated debtor is able to understand, make informed decisions about, and participate fully and meaningfully in the debt collection process." *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1171 (9th Cir. 2006). A plaintiff must allege a consumer debt but may do so through non-conclusory factual allegations that support plausible inferences. Norton has done so here.

Discovery ultimately may reveal that the underlying debt at issue in this case is not a consumer debt, and Norton's claims may fail on the merits. However, as a pleading matter, Norton's factual allegations about the nature of her debt are sufficient to state a facially plausible claim for relief.

### B.    Statute of Limitations for Plaintiff's FDCPA and Rosenthal Act Claims

Defendants move to dismiss the FDCPA and Rosenthal Act claims based on the one-year statute of limitations contained in both statutes. *See* 15 U.S.C. § 1672k(d); Cal. Civ. Code § 1788.30(f). Defendants argue that Norton's claims are time-barred because the alleged wrongful conduct first occurred years before she filed this action, and subsequent collection efforts by Defendants were a "mere continuation of enforcement efforts [that do] not revive her untimely claims." Mot. at 16. Norton counters that each writ of execution and memorandum of costs filed by Defendants without complying with section 673 was a discrete violation of the FDCPA and Rosenthal Act, and that violations falling within the year prior to when she filed the complaint are not time-barred. Opp. at 6-11. Norton further claims that the violations occurring prior to the one-year cutoff are timely pled under the discovery rule.

### 1.    Acts Within the One-Year Limitation Period

Norton alleges that Arrow filed the collections action against her on October 21, 2008. SAC ¶ 14. Default judgment was entered against Norton on December 26, 2008. *Id.* ¶ 15. On February

United States District Court
Northern District of California

24, 2012, H&Z substituted as Arrow's new counsel. *Id.* ¶ 16; *Id.*, Ex. 2.  H&Z caused a writ of execution to issue from Sacramento County Superior Court on May 17, 2012. *Id.* ¶ 17; *see also* Mot., Ex. C.  After that, Defendants sought and obtained five subsequent writs of execution on December 27, 2013; January 7, 2015; March 18, 2016; November 8, 2016; and September 1, 2017. SAC ¶¶ 19, 21, 22, 23, 25; *see also* Mot., Ex. C.  Defendants also filed memoranda of costs on May 17, 2012; December 27, 2013; January 7, 2015; March 18, 2016; November 8, 2016; and September 1, 2017.[2]  Mot., Ex. C.  Norton filed this lawsuit on August 17, 2018.  Both parties appear to agree that the judgment collection actions that Defendants took prior to August 17, 2017 fall outside the one-year statute of limitations.  Therefore, the only actions within the limitations period are the writ of execution issued on September 1, 2017, and the memorandum of costs filed on the same date. The court now analyzes whether Norton can state timely claims based on the September 1, 2017 writ of execution and memorandum of costs.  Norton's contentions that the older claims are timely under the discovery rule are addressed in a later section.

### a.  The September 1, 2017 Writ of Execution

"In ordinary civil actions, after entry of a money judgment and upon application, the law entitles a judgment creditor to issuance of a writ of execution by the clerk of the court."  *In re Marriage of Farner*, 216 Cal. App. 3d 1370, 1376 (1989); *see also* Cal. Code Civ. P. § 699.510(a). Separate writs are issued for each county where a levy is to be made. Cal. Code Civ. P. § 699.510(a).

Defendants cite numerous cases for the proposition that the September 2017 writ of execution does not constitute a new FDCPA violation that restarts the statute of limitations.  Mot. at 13; *see Martin v. Sessoms & Rogers, P.A.*, 2010 WL 3200015, at *3-4 (E.D. N.C. Aug. 12, 2010) ("[N]ew communications concerning an old claim do not start a new period of limitations.") (further quotations and citations omitted)); *Castellanos v. Deutsche Bank*, 2014 WL 2197617 ("New communications about old claims do not constitute violations of the FDCPA [and] maintaining a lawsuit or the course of litigations is not, in itself, a continuing violation of the FDCPA." (internal quotation marks omitted) (citation omitted)); *Parker v. Pressler & Pressler*, 650 F. Supp. 2d 326,

---

[2] Plaintiff incorrectly states that H&Z filed this memorandum on August 18, 2017. SAC ¶ 24.  The document is dated August 18, 2017, but was filed on September 1, 2017. SAC, Ex. 6; *see also* Mot., Ex. C.

341 (D. N.J. 2009) ("The course of litigation is not, in itself, a 'continuing violation' of the FDCPA."); *Thorpe v. Ertz*, 2018 WL 616123, at \*3 (D. Alaska Jan. 29, 2018) ("The court is unpersuaded that the mere act of [the creditor] re-asserting his client's position during litigation restarted the limitations period anew.").

None of Defendants' cases are persuasive here. Many explicitly refer to communications (as opposed to legal actions) from the creditor about the debt. For example, in *Martin*, the only action the creditor took within the one-year statute of limitations was to contact a sheriff's office to reschedule an execution sale on one of the plaintiff's properties. *Martin*, 2010 WL 3200015, at \*4.[3] Similarly, *Prowell v. Cam Credits, Inc.*, 2015 WL 2239309 (D. Or. May 12, 2015) involved two representations by a creditor (one by letter, one at a hearing) regarding the amount of debt owed by the debtor. *Prowell*, 2015 WL 2239309, at \*3. The court found that the representations were "not materially different from the representation in [the] small-claims court complaint," and therefore were merely "new communication[s] concern[ing] an old claim." *Id.* (quoting *Simard v. LVNV Funding, LLC*, 2011 WL 4543956, at \*5 (D. Mass. Sep. 28, 2011)). Likewise, in *Reese v. JPMorgan Chase & Co.*, 686 F. Supp. 2d 1291 (S.D. Fla. Oct. 15, 2009), the communications at issue were notices by the creditor regarding the amount of the debt. 686 F. Supp. 2d at 1306–07.

Here, the writ of execution filed by Defendants is not a "communication" about the debt. The purpose of a writ is not to relay information, report the status or amount of the debt, or restate the allegations in the underlying complaint. Instead, obtaining a writ of execution is a legal action that requires a levying officer to enforce a money judgment. CCP § 699.520. Accordingly, the line of cases regarding new communications about old claims is not applicable here.[4]

---

[3] Notably, *Martin* relied on *Nutter v. Messerli & Kramer, P.A.*, 500 F. Supp. 2d 1219 (D. Minn. 2007), which is no longer good law because the Eighth Circuit subsequently rejected its underlying theory. *See Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685, 694 (8th Cir. 2017) ("If a debt collector violates the FDCPA, an individual may sue to enforce FDCPA liability within one year of that violation. It does not matter that the debt collector's violation restates earlier assertions—if the plaintiff sues within one year of the violation, it is not barred by § 1692k(d).").

[4] Even if Defendants' theory were applicable here, its viability is questionable in light of the fact that several other Circuit courts have rejected it. *See Demarais*, 869 F.3d at 694; *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1188 (10th Cir. 2013) (citing *Solomon v. HSBC Mortg. Corp.*, 395 F. App'x 494, 497 (10th Cir. 2010) ("The FDCPA's comprehensive scheme makes many debt-collecting maneuvers actionable. Thus, separate communications can create separate causes of action arising from collection of a single debt.")); *Purnell v. Arrow Fin. Servs., LLC*, 303 F. App'x

United States District Court
Northern District of California

In other cases cited by Defendants, the alleged FDCPA violation was the filing of the underlying collection action, and courts found that subsequent litigation efforts in those cases were not independent violations. *See, e.g.*, *Parker*, 650 F. Supp. 2d at 337 (finding that filing allegedly false affidavits in furtherance of the state collection action was not an independent FDCPA violation that would restart the statute of limitations); *Ertz*, 2018 WL 616123, at *3 (determining that subsequent motions and oppositions filed by the creditor in the underlying collection case did not restart the limitations period); *Bihn v. Fifth Third Mortg. Co.*, 2013 WL 5657598, at *4 (S.D. Ohio Oct. 16, 2013) (finding that "court pleadings that occurred during the prosecution of a debt collection lawsuit" were not separate violations of the FDCPA). By contrast, Norton does not allege that the FDCPA violation was the filing of the complaint against her in 2008. Nor does she argue that any litigation efforts leading to obtaining the judgment against her were unlawful. Rather, she alleges that Defendants violated the FDCPA by attempting to enforce the judgment without first complying with section 673. Each writ of execution, including the writ issued in September 2017, lists Arrow as the judgment creditor even though LVNV acquired Norton's debt from Arrow in 2012. *See* SAC ¶ 37; *Id.*, Exs. 5, 7. The failure of Defendants to properly record the assignment from Arrow to LVNV is precisely the violation that Norton pursues in this case. Each writ establishes an alleged violation, without reference to or reliance on the underlying collection case. *See Malik v. Unifund CCR Partners*, 2009 WL 5197820, at *5 (W.D. Wash. Dec. 22, 2009) ("The filing of a writ of garnishment is a 'legal action on a debt' which starts the statute of limitations." (quoting *Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1515 (9th Cir. 1994)).

At the hearing, Defendants identified *Castellanos* as their strongest case on this point. There, the defendant creditor brought a foreclosure lawsuit against a consumer and obtained a default judgment. 2014 WL 2197617, at *2. The default judgment was set aside, and the creditor voluntarily dismissed the action. *Id.* The debtor subsequently filed a lawsuit against the creditor alleging FDCPA violations in relation to the foreclosure action. *Id.* The creditor then filed a second foreclosure action. *Id.* The court determined that the debtor's FDCPA claims were untimely

---

297, 303 (6th Cir. 2008) (accepting the argument that "each representation, communication, or collection activity" may constitute a discrete violation of the FDCPA).

because they were brought more than a year after the plaintiff was served with the complaint in the first foreclosure action. *Id.* at *6. The court went on to hold that the filing of the second action did not save the FDCPA claims. *Id.* (quoting *Bihn*, 2013 WL 5657598, at *4 ("New communications about old claims do not constitute violations of the FDCPA [and] maintaining a lawsuit or the course of litigations is not, in itself, a continuing violation of the FDCPA.") Defendants cite *Castellanos* for the proposition that even an entirely new legal action did not constitute a separate violation of the FDCPA because it was merely a continuation of an older, untimely claim.

The court does not agree with Defendants' interpretation of *Castellanos*. In that case, the plaintiff could not argue that the second foreclosure action was a discrete violation within the statute of limitations because its FDCPA claim was based on the defendants' allegedly false statements in connection to the first foreclosure case. 2014 WL 2197617, at *6. The plaintiff did not seek leave to amend the complaint to add a FDCPA claim based on representations made in the second foreclosure action. *Id.* The portion of the case cited by Defendants does not refer to new, discrete violations of the FDCPA, but instead rejects the "continuing violation" doctrine, which provides that the "statute of limitations does not begin to run on a continuing wrong until the wrong has been concluded." *Ball v. Ocwen Loan Servicing, LLC*, No. 12-cv-0604, 2012 WL 1745479, at *4 (N.D. Ohio May 16, 2012). By contrast, Norton asserts that each writ of execution constituted a distinct violation of the FDCPA, not merely a continuing violation of a past wrong. *See* Opp. at 7. Accordingly, *Castellanos* does not support Defendants' position.

*Malik*, cited by Norton, is persuasive. In *Malik*, the defendant creditors obtained a series of writs of garnishment, only one of which was issued in the year before the plaintiff debtor filed his FDCPA action. 2009 WL 5197820 at *1-2, 5. The plaintiff's FDCPA claim related to the most recent garnishment. *Id.* at *5. The court held that "nothing in the language of the FDCPA suggests that the statute of limitations runs from the first possible violation and encompasses all later-occurring and distinct violations of the Act . . . . a plaintiff may file an action for any violation of the Act which occurs within one year of filing the complaint." *Id.* The court did not reach the question of whether the plaintiff could satisfy the statute of limitations as to the earlier garnishments because the plaintiff limited his claim to the garnishment that was issued within a year before he

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

filed his complaint. *Id.* Nevertheless, the court rejected the defendants' arguments that the most recent writ of garnishment was merely a continuation of defendants' prior attempts to collect on the debt. *Id.* A writ of garnishment, like the writ of execution at issue in this case, is a post-judgment collection action. As in *Malik*, the alleged violation in this case is a distinct act that falls within the one-year statute of limitations.

The Ninth Circuit's analysis in *Naas v. Stolman*, 130 F.3d 892 (9th Cir. 1997) is also illuminating. The case is not controlling because it addressed a different issue; namely, "at which point the statute of limitations begins to run when the alleged violation of the [FDCPA] is the filing of a lawsuit." 130 F.3d at 893. However, *Naas* cites several cases for the proposition that the statute of limitations in section 1692k(d) is triggered at "the debt collector's last opportunity to comply with the Act." *Id.* (citing *Maloy v. Phillips*, 64 F.3d 607, 608 (11th Cir. 1995); *Mattson v. U.S. West Communications*, 967 F.2d 259, 261 (8th Cir. 1992)). Since the alleged violation in that case was the filing of the complaint, the Ninth Circuit held that the "last opportunity to comply with the Act" was the filing of the complaint. *Id.* Applying the same logic here, the alleged violation of the FDCPA was Defendants' failure to file an acknowledgment of assignment pursuant to section 673 prior to filing the writs of execution. Defendants could have filed an acknowledgment before filing any of the writs of execution, and in fact have proven as much by filing the Acknowledgement in September 2018. Since Defendants still had the opportunity to comply with the FDCPA prior to filing the writ of execution in September 2017, an FDCPA claim based on that action is not barred by the statute of limitations.

Norton's argument also finds support in the fact that several courts outside this circuit have held that "filing an invalid judgment lien is a discrete violation of the FDCPA." *Stennett v. Midland Funding, LLC*, No. 16-cv-00656-CRS, 2017 WL 1205589, at *2 (W.D. Ky. Mar. 30, 2017); *see also Osinubepi-Alao v. Plainview Fin. Servs., Ltd.*, 44 F. Supp. 3d 84, 91 (D.D.C. 2014) ("[C]ourts have found that the act of placing a lien on a debtor's property is its own separate and discrete violation of the Fair Debt Collection Practices Act commencing a separate statute of limitations calculation."); *Fontell v. Hassett*, 870 F. Supp. 2d 395, 404 (D. Md. 2012) ("[I]t makes sense that the limitations period would begin at the time the lien was placed on Plaintiff's property, since this was the

definitive action taken by Defendants that is alleged to constitute an abusive debt collection practice."). The reasoning in these cases applies here because placing a lien on property is similar to issuing a writ of execution for wage garnishment, since both are post-judgment enforcement actions.

In sum, each of Defendants' attempts to collect on Norton's debt through issuing writs of execution were distinct legal acts that could serve as a basis for a FDCPA claim. Norton's claim relating to the writ of execution filed in September 2017 is timely, and Defendants' motion to dismiss that claim is denied.

### b.    The September 1, 2017 Memorandum of Costs

Norton argues that the memorandum of costs filed on September 1, 2017 was also a distinct violation of the FDCPA and within the one-year statute of limitations. At the hearing, neither party was able to explain the legal basis or effect of a memorandum of costs, nor did the parties brief the issue. Given the parties' failure to adequately address the issue, the court does not reach whether the FDCPA claim based on the memorandum is a "new communication about an old claim" or a "subsequent filing made in the course of litigation" and therefore untimely, or whether it is a distinct legal action with a separate statute of limitations.

### 2.    Discovery Rule

Under the discovery rule, "a limitations period begins to run when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Id.* at 940 (internal quotation marks and citations omitted). The discovery rule permits a plaintiff to demonstrate that the statute of limitations began running when the plaintiff discovered the injury rather than when the injury occurred. *Lyons v. Michael & Associates*, 824 F.3d 1169, 1173 (9th Cir. 2016). "If an FDCPA claim is time-barred on the face of the complaint, the plaintiff has the burden to show that he or she is entitled to the benefit of the discovery rule." *Laforge v. Richland Holdings, Inc.*, 2018 WL 525298, at *4 (D. Nev. Jan. 23, 2018) (citing *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1150 (9th Cir. 2002)). The Ninth Circuit has applied the discovery rule in FDCPA cases. *See Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935 (9th Cir. 2009).

Norton argues that the discovery rule applies to her claim to the extent it relies on actions

15

United States District Court
Northern District of California

that took place prior to August 2017 because she had no reason to know that Defendants had failed to file an acknowledgement of assignment under section 673, which is the injury underlying her FDCPA claim.  Opp. at 11-12.  She contends that the statute of limitations began running around November 2017, when she contacted the attorneys at HERA and learned for the first time that LVNV, not Arrow, was attempting to enforce the judgment against her.  *Id.* at 12.  Defendants respond that Norton was responsible for diligently investigating her potential claim and her failure to do so does not permit her the benefit of the discovery rule.  Mot. at 16-17.

The federal formulation of the discovery rule states that "[a] plaintiff knows or reasonably should know of a claim when he or she knows 'both the existence and the cause of his injury.'" *O'Connor*, 311 F.3d at 1147 (quoting *United States v. Kubrick*, 444 U.S. 111, 113 (1979)); *see also Bibeau v. Pac. Nw. Research Found. Inc.*, 188 F.3d 1105, 1108 (9th Cir. 1999), *amended by* 208 F.3d 831 (9th Cir. 2000) (holding that the limitations period does not begin to run until a plaintiff "has knowledge of the critical facts of his injury, which are that he has been hurt and who has inflicted the injury") (internal quotation marks and citations omitted).[5]  Under this standard, "a plaintiff who did not actually know that his rights were violated will be barred from bringing his claim after the running of the statute of limitations, if he should have known in the exercise of due diligence." *Bibeau*, 188 F.3d at 1108.

Norton's SAC alleges that her attorney at HERA wrote to H&Z in December 2017 in response to the wage garnishment that Defendants commenced in November 2017.  SAC ¶¶ 26, 33.  The letter stated that the wage garnishment appeared to be improper because Arrow had filed a Notice of Cancellation with the California Secretary of State, and no other party had established itself as the assignee of record.  *Id.* ¶ 33.  Norton alleges that LVNV did not disclose to her that they had acquired the judgment until 2018.  *Id.* ¶ 39.  She contends that the statute of limitations for her older claims should not begin running until November 2017, when she contacted the attorneys at HERA who were aware that Arrow had filed the Notice of Cancellation.  Opp. at 12.  To the extent

---

[5]  The federal discovery rule is more permissive to plaintiffs than the California rule, which holds that a plaintiff is on notice of a claim when she merely "suspects or should suspect that her injury was caused by wrongdoing." *O'Connor*, 311 F.3d at 1147 (quoting *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1109 (1988)).

United States District Court
Northern District of California

that the allegations in her SAC are not sufficient to support the application of the discovery rule, Norton requests leave to amend to address this point.  *Id.*

The SAC does not contain allegations that establish when Norton learned that Defendants were unlawfully enforcing the judgment in Arrow's name or when she should have learned of that violation.  Although the SAC lays out the dates on which Defendants pursued various collection efforts, such as securing writs of execution and filing memoranda of costs, it does not allege whether Norton was aware of those efforts nor does it describe what steps she took to respond to those actions or investigate the basis for her claims.

Defendants' motion to dismiss Norton's older claims as untimely is granted.  Plaintiff are granted leave to amend their complaint to add facts to support the application of the discovery rule to those claims.  As this is the third round of pleadings, Plaintiff must plead her best case.

**C.     Injunctive Relief**

Norton seeks class-wide injunctive relief under the UCL "enjoining Defendants' future use of the above-described unfair or deceptive acts."  SAC at 15.  Specifically, Norton seeks injunctive relief as to Defendants' alleged failure to comply with the requirements of section 673 in enforcing a judgment against Norton.  The SAC defines the proposed class as California residents who suffered injuries where:

> LVNV, represented by Harris & Zide, took judicial action (including obtaining Writs of Execution, wage garnishment, and bank levy) after October 10, 2012 and within four years [*sic*] the filing date of this action, to collect a judgment based on a consumer debt obtained in a California court; Arrow was the plaintiff of record at the time the judgment was entered; and LVNV did not file an Assignment of Judgment in conformity with California Code of Civil Procedure § 673.

SAC ¶¶ 44-46.  Defendants argue that Norton is not entitled to injunctive relief because she cannot show that the alleged wrongful conduct is likely to reoccur.  Mot. at 18-24.  They further contend that she cannot seek injunctive relief on behalf of the class unless she herself is entitled to it.

"[T]he remedy for a UCL violation is either injunctive relief or restitution."  *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1135 (9th Cir. 2014).  "[U]nder California law, . . . a plaintiff cannot receive an injunction for past conduct unless he shows that the conduct will probably recur."  *Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1123 (9th Cir. 1999),

*overruling recognized on other grounds by Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976 (9th Cir. 2011); *see also Del Campo v. Am. Corrective Counseling Serv., Inc.*, 718 F. Supp. 2d 1116, 1138 (N.D. Cal. 2010) (declining to enter injunctive relief in a putative class action against FDCPA practices on a UCL claim where the plaintiffs could not show a likelihood of the alleged harm reoccurring); *Mallon v. City of Long Beach*, 164 Cal. App. 2d 178, 190, 330 P.2d 423 (1958) ("Injunctive power is not used as punishment for past acts and is ordered against them only if there is evidence they will probably recur.").

As an initial matter, Norton frames this as a mootness issue, while Defendants argue that it is one of standing. Thus, Norton asserts that she had standing to seek injunctive relief when she filed her complaint in August 2018, and that Defendants cannot moot the claim by rectifying the alleged wrongful conduct after that point—i.e., by filing the Acknowledgment in September 2018. *See* Opp. 18 (citing *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1090 (9th Cir. 2011)). Defendants contend that the issue is one of standing, and that Norton did not have standing when she filed her complaint in August 2018.

Before determining whether Norton's claim was mooted by the September 2018 filing of the Acknowledgement, it is first necessary to establish whether Norton had standing at the time she filed her complaint. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180, 189 (2000) (finding that standing is determined at the "outset of the litigation" while mootness relates to a plaintiff's personal interest throughout the existence of a case); *Jackson v. Ca Dep't of Mental Health*, 399 F.3d 1069, 1072-73 (9th Cir. 2005) (same).

### 1.    Norton's Standing for Injunctive Relief

The requirement of showing future harm is an essential element for establishing Article III standing. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992) ("[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III.") A plaintiff must demonstrate a "real or immediate threat that they will be wronged again—a likelihood of substantial and immediate irreparable injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1982) (quotation omitted). "[T]he injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *Id.* at 102 (citations omitted). "Past exposure to

illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton,* 414 U.S. 488, 495-96 (1974).

Norton argues that although past conduct alone cannot meet the Article III standing requirements, "[a]n inference arises from illegal past conduct that future violations may occur." Opp. at 13 (quoting *S.E.C. v. Koracorp Indus., Inc.*, 575 F.2d 692, 698 (9th Cir. 1978) ("*Koracorp*")). She quotes *Koracorp* for the proposition that "[t]he fact that illegal conduct has ceased does not foreclose injunctive relief." *Id.* Norton points to Defendants' past history of conduct in attempting to enforce the judgment against her. Opp. at 13. Between 2013 and 2017, Defendants caused six writs of execution to issue, five of which were issued after Arrow filed its Notice of Cancellation. *Id.*; *see also* SAC ¶¶ 19-25. Norton points out that Defendants garnished her wages as recently as December 2017, less than a year before the complaint was filed, and opposed her claim of exemption. Opp. at 13. For their part, Defendants argue that the cited actions are all past conduct that do not show that the alleged unlawful conduct was likely to reoccur at the time Norton filed the complaint. Mot. at 20. They point out that they terminated the garnishment order against Norton in December 2017 and did not oppose her May 2018 motion to quash the writs of execution. *Id.* They argue that since past conduct alone is not enough, Norton's allegations about their judgment enforcement activity between 2013 and 2017 is insufficient to support her claim for injunctive relief. *Id.*

Defendants are correct that past conduct alone is insufficient to support a claim for injunctive relief. *Enrico's, Inc. v. Rice*, 730 F.2d 1250, 1253 (9th Cir. 1984) ("Past wrongs are not enough for the grant of an injunction."); *Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1123 (9th Cir. 1999), *overruling on other grounds recognized by Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976 (9th Cir. 2011) (stating that under the UCL, "a plaintiff cannot receive an injunction for past conduct unless he shows that the conduct will probably recur"). However, "[a] trial court's wide discretion in fashioning remedies is not to be exercised to deny relief altogether by lightly inferring an abandonment of the unlawful activities from a cessation which seems timed to anticipate suit." *United States v. Parke, Davis & Co.*, 362 U.S. 29, 48 (1960); *see also Koracorp*, 575 F.2d at 698

1   ("Promises of reformation and acts of contrition are relevant in deciding whether an injunction shall

2   issue, but neither is conclusive or even necessarily persuasive, especially if no evidence of remorse

3   surfaces until the violator is caught.")  Norton responds that Defendants only stopped their unlawful

4   activity once Norton retained counsel and contested the wage garnishment, so the cessation of

5   collection actions is not a sufficient reason to deny injunctive relief.  Opp. at 13.

6       An essential consideration is whether it would have been possible for Defendants to reoffend

7   as to Norton at the time she filed the complaint.  Norton obtained an order quashing the allegedly

8   unlawful writs of execution in June 2018, more than a month before she filed her complaint.  SAC

9   ¶ 40.  She alleges, however, that the order "did not bar [H&Z] from requesting or obtaining

10   additional Writs of Execution, or taking other actions in furtherance of collection of the judgment."

11   *Id.* ¶ 42.  Defendants point out that it is now impossible for them to fail to comply with section 673

12   as to Norton, because they filed the Acknowledgement in September 2018,  However, they do not

13   deny Norton's statement that at the time she filed the complaint, the state court order quashing the

14   writs would not have barred Defendants from engaging in further unlawful collection activity.  The

15   order itself only quashed the writs that were previously issued and says nothing about prohibiting

16   the issuance of new writs.  *See* SAC, Ex. 9.  Therefore, the record leaves open the possibility that

17   Defendants could have continued their alleged unlawful conduct, and the court does not "lightly

18   infer[] an abandonment of the unlawful activities."  *See Parke, Davis & Co.*, 362 U.S. at 48; *See

19   also Koracorp*, 575 F.2d at 698.

20       Accordingly, the court holds that Norton had standing to pursue her injunctive relief claim

21   at the outset of the litigation.[6]

22   //

23   //

---

24   [6] In a footnote, Defendants alternatively argue that Norton must show that she had standing to pursue

25   injunctive relief when she filed the SAC on March 18, 2019.  Mot. at 21 fn. 24.  None of the cases

26   cited by Defendants support their theory.  *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010)

     examined the interpretation of a statutory requirement, not a question of Article III standing.  The

     other cases cited by Defendants do not discuss when standing is measured for an amended

27   complaint.  *See Ice Cream Distributors of Evansville, LLC v. Dreyer's Grand Ice Cream, Inc.*, 487

     F. App'x 362 (9th Cir. 2012); *Nguyen v. Barnes & Noble, Inc.*, No. 12-cv-812-JLS, 2015 WL

28   12766130, at *9 (C.D. Cal. June 16, 2015).  Defendants cite no case that found a plaintiff had

     standing at the beginning of the case and then lost it because they filed an amended complaint.

United States District Court
Northern District of California

### 2.    Mootness

Defendants argue that even if Norton had standing for injunctive relief at the beginning of the case, her request for injunctive relief is now moot. Reply at 14. They contend that in order to defeat mootness, Norton would still have to show that there is "a reasonable expectation that [she] will be subject to the same action again." *Id.* (quoting *Bruton v. Gerber Prod. Co.*, No. 12-cv-02412-LHK, 2018 WL 1009257, at *7 (N.D. Cal. Feb. 13, 2018)). Defendants aver that there is "**zero** probability that Defendants will attempt to enforce the judgment against [Norton] or claim costs without complying with Section 673 because H&Z filed the Assignment." Mot. at 21 (emphasis in original).

Norton responds by relying on *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081 (9th Cir. 2011) for the proposition that defendants cannot "'buy off' proposed class representatives before a court can certify a class, thereby 'frustrat[ing] the objectives of class actions." 653 F.3d at 1088 (quoting *Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 339 (1980)). *Pitts* was a putative class action alleging various claims for relief under the Fair Labor Standards Act and state law. *Id.* at 1084. Before the class had been certified, the defendant made an offer of judgment under Rule 68 that fully compensated the named plaintiff for his claimed damages. *Id.* at 1085. The named plaintiff declined the offer, and the defendant filed a motion to dismiss based on lack of subject matter jurisdiction, arguing that its offer of judgment rendered the case moot. *Id.* at 1085. The district court granted the motion, and the plaintiff appealed. *Id.* The Ninth Circuit engaged in an exhaustive review of the Supreme Court's caselaw on mootness and found that "if the district court has certified a class, mooting the putative class representative's claim will not moot the class action." *Id.* at 1090. This is because "the class of unnamed persons described in the certification acquire[s] a legal status separate from the interest asserted by [the named plaintiff]." *Id.* at 1087. However, the court recognized that the issue is murkier if a class has not yet been certified by the time the class representative's claims are mooted. *Id.* at 1090. Where the claims at issue are "so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires," the standing of the class as a whole "relates back" to the filing of the complaint and prevents a case from being mooted when the named

plaintiff's individual claim is mooted. *Id.* at 1087-88. *Pitts* extended the "relate back" doctrine to claims that, while "not *inherently* transitory—become no less transitory . . . [because] they are 'acutely susceptible to mootness in light of [the defendant's] tactic of 'picking off' lead plaintiffs with a Rule 68 offer to avoid a class action." *Id.* at 1091 (quoting *Weiss v. Regal Collections*, 385 F.3d 337, 347 (3d Cir. 2004)). The court also pointed out that the "core concern" of Rule 23 is "the aggregation of similar, small, but otherwise doomed claims," and allowing defendants to evade class actions through picking off named plaintiffs undermines the purpose of Rule 23. *Id.* The court accordingly held that an unaccepted Rule 68 offer made before a class is certified does not moot a class action. *Id.* The *Pitts* rule has also been extended to situations where the named plaintiff's individual standing for injunctive relief has been mooted before class certification. *Haro v. Sebelius*, 747 F.3d 1099, 1110 (9th Cir. 2014) (finding that an injunctive relief claim filed on behalf of a putative class did not become moot when the named plaintiff's individual claim expired prior to class certification based on voluntary conduct by the defendant).

*Pitts* applies here. Norton's key allegations are that Defendants engaged in unfair debt collection practices through attempting to collect on the judgment against her without complying with section 673. Section 673 requires merely that a creditor acknowledge that they have acquired a debt through an assignment. The Acknowledgement in this case is less than two pages long, and Defendants filed it less than a month after this case was filed. Def. RJN, Ex. B. The process of complying with section 673 appears to be simple and fast. If the court found that Norton's claims were mooted by the filing of the Acknowledgement, it is near certain that no plaintiffs could maintain a similar case against Defendants, as Defendants could quickly moot those claims as well. This is precisely the kind of claim that *Pitts* found to be "capable of repetition yet evading review"— a claim that is rendered "transitory by virtue of the defendant's litigation strategy." 653 F.3d at 1091. Finding such claims to be moot prior to class certification undermines the purpose of Rule 23. Although Norton's own claim for injunctive relief expired once Defendants filed the Acknowledgement, the injunctive relief claim on behalf of the putative class was not mooted. *See Haro*, 747 F.3d at 1110. Therefore, Norton may continue to represent the class for the purposes of seeking injunctive relief.

Defendants' motion to dismiss the class injunctive relief claim is denied.

**V.    CONCLUSION**

For the foregoing reasons, the court grants in part and denies in part Defendants' motion to dismiss.  Defendants' motion to dismiss Norton's FDCPA and Rosenthal claims on the basis that she has not adequately alleged the existence of a consumer debt is denied.  Norton's FDCPA and Rosenthal Act claims with respect to Defendants' actions taken before August 17, 2017 are dismissed with leave to amend.  The motion is granted as to Norton's individual claim for injunctive relief, but denied as to the class claim.

The deadline for filing a third amended complaint is **September 11, 2019.  Plaintiff must plead her best case.**  The parties' initial case management conference will be held on **October 16, 2019 at 1:30 p.m.**  The parties shall file an updated case management conference statement by **October 9, 2019.**

**IT IS SO ORDERED.**

Dated: August 28, 2019



_____
Donna M. Ryu
United States Magistrate Judge