UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SONYA NORTON,

Plaintiff,

v.

LVNV FUNDING, LLC, et al.,

Defendants.

Case No.  18-cv-05051-DMR

**ORDER ON MOTION FOR CLASS CERTIFICATION**

Re: Dkt. No. 76

Plaintiff Sonya Norton filed this putative class action against Defendants LVNV Funding, LLC ("LVNV") and Law Office of Harris & Zide ("H&Z") alleging violations of the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and California's Fair Debt Collection Practices Act ("Rosenthal Act"), California Civil Code § 1788 *et seq.*  Norton also seeks injunctive relief under California's Unfair Competition Law ("UCL"), California Business and Professions Code § 17200 *et seq.*  Norton now moves for class certification under Federal Rule of Civil Procedure 23 ("Rule 23").  [Docket Nos. 76 ("Mot."), 88 ("Reply").]  Defendants oppose. [Docket No. 86 ("Opp.").]  The court held a hearing on July 23, 2020.

Having considered the parties' submissions and oral argument, and for the reasons detailed below, the court grants Norton's motion for class certification.

## I.    BACKGROUND

On October 21, 2008, non-party Arrow Financial Services, LLC ("Arrow") filed a collections action against Norton in San Mateo County Superior Court ("State Action"), alleging that Norton failed to tender amounts owed to Arrow's assignor, Washington Mutual Bank ("WMB").  [Docket No. 86-4, Defendants' Request for Judicial Notice ("Def. RJN"), Ex. 1.]  The case title for the State Action is *Arrow Financial Services LLC v. Sonya Norton*, Case No. CLJ 477648.  The complaint alleged damages in the amount of $3,073.92.  *Id.*  On December 26, 2008,

United States District Court
Northern District of California

the state court entered a default judgment against Norton in the amount of $3,986.60, representing the claimed damages of $3,073.92, prejudgment interest in the amount of $673.68, and costs of $239.00. Def. RJN, Ex. 3 ("Judgment"). LVNV acquired the Judgment around September 2011.[1] Docket No. 86-1, Declaration of Anne E. Herthneck ("Herthneck Decl.") ¶ 4; *see also* Def. RJN, Ex. 4, Acknowledgment of Assignment of Judgment ("Acknowledgment"). LVNV represents that when it acquires delinquent accounts from creditors, it "does not know how or why the account-debtors incurred the unpaid obligations on the accounts." Herthneck Decl. ¶ 2. With respect to Norton's account specifically, LVNV received "a single account statement" that "[did] not indicate the nature of the obligation or purpose or purposes the unpaid balance was incurred." *Id.* ¶ 4.

In December 2011, H&Z mailed a letter to Norton informing her that it represented LVNV with respect to a balance due in the amount of $6,446.07. [Docket No. 86-2, Declaration of Flint C. Zide ("Zide Decl."), Ex. A.] The title of the letter appears to state that the overdue account related to WMB. Norton did not respond to the letter. Zide Decl. ¶ 6. She testified at her deposition that she did not recall receiving it, although she acknowledged that it was addressed to the address where she was living at that time. *See* Docket No. 86-3, Declaration of R. Travis Campbell ("Campbell Decl."), Ex. D, Deposition of Sonya Norton ("Norton Depo.") at 50:7-51:5.

On February 24, 2012, H&Z filed a substitution of counsel in the State Action. [Docket No. 80, Plaintiff's Request for Judicial Notice ("Pltf. RJN"), Ex. 3.] The caption states that H&Z represented the "Plaintiff," but did not give the name of the represented party. *Id.* On May 17, 2012, H&Z filed a writ of execution in the State Action. Zide Decl. ¶ 7; Def. RJN, Ex. 5, Docket in State Action as of April 15, 2019. Pursuant to the writ, H&Z served an earnings withholding order on Norton's employer. Zide Decl. ¶ 7. Defendants represent that Norton called H&Z on July 11, 2012. *Id.* ¶ 8. Zide testifies that it is H&Z's policy to inform callers of the identity of its client with respect to the caller's account and that there is no reason to believe that procedure was not followed during Norton's July 2012 call with H&Z. *Id.* ¶ 9. Norton's wages were garnished in the amount

---

[1] The Acknowledgment details a series of assignments involving third parties, and so the exact date the Judgment was assigned to LVNV is not clear. However, the ambiguity appears to be immaterial to the issues addressed in this order.

2

of $323.55 in August and September 2012.  *Id.* ¶ 10; *id.* Ex. C, Final Return to Court.

Defendants made several subsequent garnishment attempts that were unsuccessful, and on September 1, 2017, filed a writ of execution in the State Action.  Zide Decl. ¶ 12; *id.* Ex. F.  The writ lists Arrow as the plaintiff and the "Attorney For *(Name)*:" line under H&Z's signature block is blank.  *See id.*  The check box on the next line identifies H&Z as the attorney for the judgment creditor rather than for the assignee of record.  *See id.*  H&Z served an earnings withholding order on Norton's employer and garnished $1,003.73 from her wages.  Zide Decl. ¶ 13; *id.*, Ex. G, Earnings Withholding Order dated October 17, 2017; *id.*, Ex. I, Return to Court dated July 26, 2018.  The earnings withholding order lists H&Z as the attorney for the "JUDGMENT CREDITOR" and Arrow as the plaintiff.  *Id.*, Ex. G.

On November 29, 2017, Norton filed a claim of exemption in the State Action.  Zide Decl. ¶ 14.  Defendants opposed.  Pltf. RJN, Ex. 8.  The state court scheduled a hearing for January 3, 2018.  Zide Decl., Ex. J.  On December 15, 2017, Defendants received a letter from Norton's then-counsel, stating that the wage garnishment appeared to be improper because, previously unknown to Norton, Arrow had filed a Certificate of Cancellation with the California Secretary of State back in October 2012.  *Id.*, Ex. K.  The letter also stated that Defendants' garnishment actions were illegal because they were enforcing a judgment on behalf of a subsequent assignee but had failed to file an acknowledgment of assignment of judgment pursuant to Cal. Civ. Proc. Code § 673.  *Id.*  H&Z subsequently filed a notice terminating the garnishment of Norton's wages and releasing the garnished funds back to Norton's employer.  *Id.* ¶ 16; *id.*, Ex. I.  Norton asserts that not all of the garnished funds were returned.  Reply at 6-7; Docket No. 88-1, Second Declaration of Sonya Norton ("Second Norton Decl."), Ex. 1.  Norton testified that the hearing went forward on January 3rd, 2018; however, Defendants did not appear because they had already agreed to terminate the garnishment and sent notice of the same to Norton's counsel and the state court.  Norton Depo. at 99:3-24; Zide Decl. ¶ 17.

Zide represents that after H&Z agreed to terminate the judgment, Defendants made no further efforts to garnish Norton's wages or enforce the judgment.  Zide Decl. ¶ 18.  On May 11, 2018, Norton filed a motion to quash all writs of execution.  Def. RJN, Ex. 5.  On June 29, 2018,

the court granted the unopposed motion.  Def. RJN, Ex. 7.  The judgment expired on December 26, 2018.  *Id.*  On September 7, 2018, H&Z filed an Acknowledgment of Assignment of Judgment in the state court action pursuant to California Code of Civil Procedure § 673; it acknowledges the assignment of the judgment against Norton from Arrow to LVNV.  Def. RJN, Ex. 4.

In this lawsuit, Norton contends that Defendants were prohibited from taking judicial action to enforce the judgment without first complying with section 673.  She seeks to represent a class ("Class") encompassing all California residents who meet the following conditions:

> a.    LVNV Funding, LLC, represented by Law Office of Harris & Zide, took judicial action (including obtaining Writs of Execution, wage garnishment, and bank levy) after August 17, 2014 (four years prior to the filing of this action) to collect a judgment based on a consumer debt obtained in a California court;
>
> b.    Arrow Financial Services, LLC was the plaintiff of record at the time the judgment was entered; and
>
> c.    LVNV Funding, LLC did not file an Assignment of Judgment in conformity with California Code of Civil Procedure § 673 or otherwise become the assignee of record.

The four-year class period corresponds to the four-year statute of limitations for UCL claims.  Norton also seeks to represent a subclass ("Subclass") defined identically to the Class, but limited to the class period from August 17, 2017 to the present, corresponding to the one-year statute of limitations applicable to the Rosenthal Act and the FDCPA.

## II.    REQUESTS FOR JUDICIAL NOTICE

Federal Rule of Evidence 201 permits a court to take judicial notice of adjudicative facts.  "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.  "[A] court may take judicial notice of 'matters of public record,'" *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)), and the court need not accept as true allegations that contradict facts that are judicially noticed.  *See Mullis v. United States Bankruptcy Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987).

Both parties request that the court take judicial notice of documents filed in the State Action.

Documents of proceedings in other courts are subject to judicial notice. *See Borneo*, 971 F.2d at 248. The court therefore grants both RJNs with respect to the filings in the State Action. Defendants further request that the court take judicial notice of documents filed in another case that purport to show the ability of debtors to challenge the renewal of a judgment. As explained further below, the issue of renewal is not material to this order. Accordingly, the court declines to take judicial notice of Exhibits 6 and 7 to Defendants' RJN.

## III.   LEGAL STANDARD FOR CLASS CERTIFICATION

"Federal Rule of Civil Procedure 23 governs the maintenance of class actions in federal court." *Briseno v. ConAgra Foods, Inc*., 844 F.3d 1121, 1124 (9th Cir. 2017). A plaintiff seeking class certification bears the burden of demonstrating that he or she has met each of the four requirements of Rule 23(a), and at least one of the requirements of Rule 23(b). *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979-80 (9th Cir. 2011) (citing *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1186 (9th Cir.), *amended by* 273 F.3d 1266 (9th Cir. 2001)); *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 724 (9th Cir. 2007). Rule 23(a) provides that a court may certify a class only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

In addition to establishing numerosity, commonality, typicality, and adequacy, a plaintiff must establish one or more of the following grounds for maintaining the suit as a class action: (1) that there is a risk of substantial prejudice from separate actions; (2) that declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) that common questions of law or fact predominate, and the class action is superior to other available methods of adjudication. Fed. R. Civ. P. 23(b). In this case, Norton seeks certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual class members" and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The decision to certify a class is committed to the discretion of the district court. *Vinole v.*

United States District Court
Northern District of California

*Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009).  "The United States Supreme Court requires district courts to engage in a 'rigorous analysis' of each Rule 23(a) factor when determining whether plaintiffs seeking class certification have met the requirements of Rule 23." *Ellis*, 657 F.3d at 980 (citing *General Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982)).  While this analysis "may entail some overlap with the merits of the plaintiff's underlying claim, Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage."  *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 465-66 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) (internal quotation marks omitted)).  "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."  *Amgen*, 568 U.S. at 466.

## IV. DISCUSSION

Defendants argue that class certification is inappropriate because (1) Norton has failed to show that she or the putative class members incurred "debts" within the meaning of the FDCPA and Rosenthal Act; (2) the proposed class does not satisfy the Rule 23(a) requirements; and (3) Norton has not met the requirements of Rule 23(b)(3).  At the hearing, Defendants confirmed that the first dispute amounts to a concern about administrative feasibility.  Because that issue has an overarching effect on the class certification analysis, the court addresses it as a threshold question.

### A. Administrative Feasibility

Coverage under the FDCPA[2] and Rosenthal Act[3] extends only to consumer-related debts, defined as debts incurred "primarily for personal, family, or household purposes."  *See* 15 U.S.C. § 1692a(5); Cal. Civ. Code § 1788.2(e), (f); *see also Turner v. Cook*, 362 F.3d 1219, 1226–27 (9th

---

[2] "The term 'debt' means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."  15 U.S.C. § 1692a(5).

[3] "The term 'consumer credit transaction' means a transaction between a natural person and another person in which property, services, or money is acquired on credit by that natural person from the other person primarily for personal, family, or household purposes. [] The terms 'consumer debt' and 'consumer credit' mean money, property, or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction."  Cal. Civ. Code § 1788.2(e), (f).

United States District Court
Northern District of California

United States District Court
Northern District of California

Cir. 2004) ("Because not all obligations to pay are considered debts under the FDCPA, a threshold issue in a suit brought under the Act is whether or not the dispute involves a "debt" within the meaning of the statute.")  Whether a debt qualifies for protection under the FDCPA depends on the end use of the borrowed funds.  "Neither the lender's motives nor the fashion in which the loan is memorialized are dispositive of this inquiry."  *Bloom v. I.C. Sys., Inc.*, 972 F.2d 1067, 1068 (9th Cir. 1992).  Instead, the factfinder must "look to the substance of the transaction and the borrower's purpose in obtaining the loan."  *Slenk v. Transworld Sys., Inc.*, 236 F.3d 1072, 1075 (9th Cir. 2001) (citation omitted).

In this case, Defendants assert that there is no evidence that the judgments entered against any putative class members were based on a consumer debt.[4]  Anne Herthneck, an authorized representative of LVNV, testifies that LVNV is not a direct lender but instead acquires delinquent accounts that were originated by financial services companies.  Herthneck Decl. ¶ 2.  She asserts that "LVNV does not know how or why the account-debtors incurred the unpaid obligations on the accounts."  *Id.*  Similarly, Flint Zide of H&Z states that the law firm "represents creditors and debt purchasers in connection with the collection of unpaid financial obligations" but "does not know the purpose or purposes for which the transaction or transactions were incurred."  Zide Decl. ¶ 2.  Defendants argue that "[i]t would be improper to certify a class by simply assuming that each class member incurred a 'consumer debt' subject to the FDCPA and Rosenthal Act."  Opp. at 19-20.  Norton responds that Defendants are inviting the court to inappropriately impose a separate "ascertainability" requirement for class certification and that identification of class members can be managed at a later stage of litigation.

As an initial matter, Norton is correct that the Ninth Circuit has declined to adopt an "ascertainability" requirement for class certification.  *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 at 1124 n. 4.  *Briseno* noted that courts have used the term "ascertainability" in various contexts but the word has no precise legal meaning.  *Id.* at 1124 n. 3 ("We refrain from referring to

---

[4] Defendants argue that Norton has not even established that her own debt qualifies for protection under the fair debt collection statutes.  The court disagrees.  As explained further below with respect to the typicality requirement, Norton has offered sufficient evidence that her debt arose from a consumer transaction.

'ascertainability' in this opinion because courts ascribe widely varied meanings to that term."). However, the Ninth Circuit did not dismiss the concerns raised by the defendant in that case; instead, it determined that the issue was administrative feasibility rather than ascertainability. *See id.* at 1124 n. 4 ("Although the parties here use the word 'ascertainability,' they dispute only whether a class proponent must proffer an administratively feasible way to identify class members. That is therefore the only issue we decide."). Defendants confirmed at the hearing that their concern similarly relates to administrative feasibility and so Norton's arguments regarding ascertainability are not on point.

As pointed out by Norton, *Briseno* held that "Rule 23 does not impose a freestanding administrative feasibility prerequisite to class certification." *Briseno*, 844 F.3d at 1126. However, it did not hold that manageability is irrelevant to class certification. Instead, it determined that there is no need for a separate feasibility requirement because the other Rule 23 factors, including the superiority analysis of Rule 23(b)(3), adequately account for that concern. *See id.* at 1128 ("Adopting a freestanding administrative feasibility requirement instead of assessing manageability as one component of the superiority inquiry would . . . have practical consequences inconsistent with the policies embodied in Rule 23."). Recently, the Ninth Circuit affirmed *Briseno*'s determination that class identification issues can be addressed through the normal operation of Rule 23. *See Walker v. Life Ins. Co. of the Sw.*, 953 F.3d 624 (9th Cir. 2020). *Walker* also noted that courts have taken various approaches to addressing member-identification concerns and approved the Sixth Circuit's conclusion that "a district court's class-certification analysis would have been equally sufficient, regardless of whether the member-identification concern was properly articulated as part of ascertainability, Rule 23(b)(3) predominance, or Rule 23(b)(3) superiority." *Id.* at 632 (quoting *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 466 (6th Cir. 2017)) (internal quotation marks and alterations omitted). Therefore, both *Briseno* and *Walker* confirm that a court may consider administrative feasibility and class identification issues at class certification as part of its Rule 23 analysis.

Consistent with Ninth Circuit authority, the court considers Defendants' arguments regarding identification of putative class members' debts in light of Rule 23(b)(3)'s predominance and superiority requirements, below.

United States District Court
Northern District of California

**B.      Rule 23(a)**

Rule 23(a) provides that a class action is proper only if four requirements are met: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.  *See* Fed. R. Civ. P. 23(a)(1)-(4).

**1.      Numerosity**

Norton must demonstrate that the proposed class is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  "Whether joinder would be impracticable depends on the facts and circumstances of each case and does not, as a matter of law, require the existence of any specific minimum number of class members."  *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal. 1994) (citation omitted).  Courts have found 40 or more class members sufficient and 21 or fewer class members insufficient to satisfy numerosity.  *See Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 346 (N.D. Cal. 2008).

Norton asserts that there are approximately 452 members of the Class and 261 members of the Subclass.  Mot. at 8.  These figures come from LVNV's responses to Norton's interrogatories.  Relevant here, Norton's Interrogatory No. 10 to LVNV requests the number of people who meet most of the criteria to be a member of the Class:

> 1.      LVNV, represented by HARRIS & ZIDE, took judicial action in a California court against the person (including obtaining a Writ of Execution, wage garnishment, and bank levy) after August 17, 2014 to collect a judgment;
>
> 2.      Arrow Financial Services LLC was the plaintiff of record at the time the judgment was entered; and
>
> 3.      LVNV did not file any DOCUMENT purporting to be an Acknowledgement of Assignment of Judgment prior to the time the judicial action described in # 1, above, was taken.

Kennedy Decl., Ex. 1 at 5-7.  Interrogatory No. 11 is substantially similar, except it asks about the time period after August 17, 2017, which is the time period relevant to the Subclass.  In response to Interrogatory No. 10, LVNV represented that "H&Z obtained a writ of execution, wage garnishment or bank levy in connection with 452 separate judgments entered in favor of [Arrow] and

subsequently acquired by LVNV without first filing an Acknowledgment of Assignment of Judgment with the state court." *Id.* at 6-7.  In response to Interrogatory No. 11, LVNV stated that H&Z had taken steps to enforce 261 separate judgments that meet the listed criteria.  *Id.* at 8.  Norton argues that LVNV's discovery responses show that there are well over 40 members of the Class and Subclass.  Defendants point out that the interrogatory language does not ask whether the judgments were based on a debt, much less based on a consumer debt.[5] *See* Kennedy Decl., Ex. 1 at 5-7. Defendants argue that, as a result, there is "no evidence that **any** of the judgments referenced in LVNV's discovery responses are based on a 'consumer debt' and thus no basis for assuming the judgment debtors are class members."  Opp. at 20-21 (emphasis in original).

Defendants rely on *Lee v. Pep Boys-Manny Moe & Jack of California*, Case No. 12-cv-05064-JSC, 2015 WL 9480475 (N.D. Cal. Dec. 23, 2015).  In *Lee*, the plaintiff was a former employee of one of the defendants, which was a retail auto store.  *Id.* at *1.  The plaintiff was terminated because he allegedly performed an oil change on his own car at the defendant's garage and used his employee discount for a friend.  *Id.*  After his termination, he received a letter from the law firm representing his former employer, requesting payment for his unlawful acts pursuant to Cal. Penal Code § 490.5 (which applies to "Theft of retail merchandise; civil liability").  *Id.* at *2. The plaintiff alleged that the settlement letter violated several provisions of the FDCPA and brought a putative class action on behalf of current or former employees of the auto store who had received a demand letter from that law firm.  In evaluating whether the putative class met the numerosity requirement, the court determined that it was not enough for the plaintiff to show that 6,377 current or former employees received demand letters during the class period.  *Id.* at *5.  Specifically, it was "not clear that any of the 6,377 . . . individuals who received [the law firm's] settlement demand letters did so because of a debt arising from a consensual consumer transaction."  *Id.*  This was

---

[5] Norton's motion adds the "based on a debt" language.  Mot. at 7.  Defendants represent that while Norton originally propounded interrogatories with the "based on a debt" language, she subsequently propounded interrogatories that omitted that phrase.  Opp. at 20-21, n. 15 ("It is troubling that Norton's brief includes these critical words that she **deliberately** removed from the discovery she served on LVNV." (emphasis in original)); Campbell Decl. ¶¶ 2-3, Exs. A, B.  It is not clear that the text alteration was deliberately misleading, but the court shares Defendants' concern that Norton did not accurately represent the amended language.

particularly concerning because defendants submitted evidence showing that the law firm sent demand letters to employees who had been accused of theft, which would not qualify as a consensual consumer transaction.  *See id.* at *6.  The court also rejected the plaintiff's argument that unqualifying individuals could be weeded out later in the litigation.  Unlike other cases that found an inquiry into the nature of each class member's debt would be administratively feasible, the *Lee* court determined that "there is nothing so simple here to guide the inquiry."  *Id.* at *7 (citing *Gold v. Midland Credit Mgmt., Inc.*, 306 F.R.D. 623, 629 (N.D. Cal. 2014)).  The court further noted that there was still a substantial dispute about whether even the named plaintiff's financial obligation qualified as a "debt" within the meaning of the FDCPA, so it was not reasonable to infer that any other recipients of the demand letters engaged in a consumer debt. *Id.* at *6, *7.  The court accordingly held that the plaintiff did not adequately establish numerosity for the purposes of class certification.  *Id.* at *8.

*Lee* is distinguishable from this case.  In *Lee*, there was substantial evidence in the record that the defendants sent demand letters based on allegations of theft rather than consumer transactions.  2015 WL 9480475 at *6 (stating that the employer "only sends cases to [the law firm] where their investigations determine that the employee committed theft . . . and not when the former employee simply owes [the employer] money arising out of a consumer transaction such as the sale of merchandise").  Here, nothing in the record suggests that Defendants only or primarily engage in collecting money unrelated to consumer transactions.  H&Z describes itself as a law firm that "represents creditors and debt purchasers in connection with the collection of unpaid financial obligations." Zide Decl. ¶ 2.  LVNV represents that it is "in the business of acquiring portfolios of delinquent accounts that were originated by financial services companies."  Herthneck Decl. ¶ 2.  Although both Defendants represent that they do not know the purposes for which the underlying financial obligations were incurred, there is also no evidence that they generally take debt enforcement actions based on non-consumer debts.  *See* Zide Decl. ¶ 2; Herthneck Decl. ¶ 2.  Unlike in *Lee*, where the defendants raised specific reasons to doubt that the debts at issue were consumer in nature, Defendants here offer only conclusory assertions that some of the debts at issue will likely be commercial rather than consumer in nature.  *See Lee*, 2015 WL 9480475, at *6; *see also Yazzie*

*v. Gurley Motor Co.*, 2015 WL 10818834, at *6 (D.N.M. Oct. 30, 2015) ("If barebones assertions like these were enough to defeat class certification, defendants could easily avoid class certification of consumer protection violations by neglecting to create or maintain records about the consumer nature of their customer transactions.").

The facts of this case are closer to those in *Gold*. There, the putative class consisted of people who incurred debt to a bank "primarily for personal, family, or household purposes." 306 F.R.D. at 627. When the plaintiff moved for class certification, there was no evidence in the record that showed how the proposed class members incurred their debt. *Id.* at 628. The court rejected the defendants' arguments that the lack of such evidence defeated numerosity. It determined that the named plaintiff had demonstrated through her declaration and deposition testimony that her debt was primarily based on consumer purchases, and that it was "reasonable to infer that there are other individuals among the recipients of the [unlawful] letter that are similarly situated to Plaintiff." *Id.* at 629. Other courts have accepted similar reasoning to establish numerosity. *See Butto*, 290 F.R.D. at 392 ("[C]ommon-sense suggests that at least some percentage of the 18,949 letters were sent to [personal rather than business] customers, and that potential class members likely number in the thousands."); *see also Nicholson v. Williams*, 205 F.R.D. 92, 98 (E.D.N.Y. 2001) ("Plaintiffs need not establish the precise number of potential class members since courts are empowered to make common sense assumptions to support a finding of numerosity." (internal quotation marks and citation omitted)). Like in *Gold*, there is no direct evidence of how the potential class members in this case incurred their debt. However, as discussed further below, Norton has adequately demonstrated that her own debt arose from consumer rather than business purchases. It is reasonable to infer that of the 452 judgments H&Z acquired since August 2014 and the 261 judgments acquired since August 2017, many were similarly based on consumer debts. If, after investigation, the class is smaller than permitted by Rule 23(a)(1), Defendants may move to decertify it. *See Sullivan v. Kelly Servs., Inc.*, 268 F.R.D. 356, 362 (N.D. Cal. Apr. 27, 2010).

In sum, the court finds that joinder of all class members is impracticable and that the class satisfies the numerosity requirement under Rule 23(a).

12

### 2.      Commonality

Commonality requires that there be "questions of fact or law which are common to the class." Fed. R. Civ. P. 23(a)(2).  "All questions of fact and law need not be common to satisfy the rule.  The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019.  "What matters to class certification . . . is not the raising of common 'questions'– even in droves – but, rather the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation.  Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Dukes*, 564 U.S. at 350 (citation and internal quotation marks omitted).

Here, Plaintiffs allege that Defendants engaged in a uniform pattern of conduct: namely, that they attempted to enforce judgments for which they were not the original creditor without filing an acknowledgment of assignment of judgment.  The resolution of all class members' claims depends on whether such conduct constitutes an unfair debt collection practice under the FDCPA and Rosenthal Act.  Thus, the crux of the case presents one common question of law.  In addition, the case raises common questions of fact, including whether Defendants acquired each debt from Arrow, whether they attempted to enforce that debt, and whether they filed an acknowledgment of assignment before doing so.  Defendants' argument that there are numerous individual questions is unavailing because it goes predominance rather than commonality.  *See* Opp. at 23.

Accordingly, Norton has shown that this case raises common questions of law and fact.

### 3.      Typicality

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Rule 23(a)(3) is "'permissive' and requires only that the representatives' claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting *Hanlon*, 150 F.3d at 1020); *see also Lozano*, 504 F.3d at 734 ("Under Rule 23(a)(3) it is not necessary that all class members suffer the same injury as the class representative."). Thus, typicality is "satisfied when each class member's claim arises from the

13

same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (quotation omitted). Defendants assert that Norton's claims are not typical of the proposed class for two reasons: first, because she has not established that the judgment against her was based on a consumer debt and second, because she lacks standing to pursue her UCL claim.

With respect to the nature of Norton's debt, Norton testified at her deposition that she did not remember having an account with WMB prior to October 2008 or that she failed to pay back WMB for a balance of over $3,000. Norton Depo. at 45:23-46:6. She later testified that she did remember having a checking account with WMB prior to April 2007 but not whether she had any other account with that bank. Norton Depo. at 121:12-16. She stated that she had a "couple credit cards" at that time, that she did not remember specifically whether one of them was issued by WMB, and that she possibly had a credit card with WMB. Norton Depo. at 122:3-17. Her declaration contains similar assertions. She avers that she had "at least one credit card that [she] was not able to pay in the 2007 time frame"; that one such credit card was a Mastercard;[6] that she had a banking account with WMB at that time so "it seems likely" that she also had a credit card with WMB; that every credit card she has ever had was used for "personal, family, or household" purchases; and that she has never owned a business or a business credit card. [Docket No. 77, First Declaration of Sonya Norton ("First Norton Decl.") ¶¶ 8-9.] Defendants assert that Norton's declaration is inconsistent with her deposition testimony because her declaration states that she is "sure" that she used the credit card at issue for consumer purposes but equivocated on this point during her deposition. *See* Opp. at 25. However, Norton's testimony is not contradictory. Both her deposition and declaration establish that she knows that she has only had credit cards for personal use, but that she does not specifically remember having a credit card with WMB. This evidence is sufficient at this stage of litigation to demonstrate that Norton incurred a consumer debt protected by the FDCPA and Rosenthal Act. Later developments might call her testimony into doubt or a factfinder may find that Norton's claim fails on the merits. However, courts may not "engage in free-ranging merits

---

[6] H&Z allegedly informed Norton that the judgment was based on a Mastercard opened in 1999 and closed in 2007. First Norton Decl. ¶ 7.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    inquiries at the certification stage," and should consider the merits "only to the extent . . . that they

2    are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."

3    *Amgen*, 568 U.S. at 465-66.  For the purposes of the current inquiry, Norton has adequately shown

4    that Defendants pursued collection activities against her based on a consumer debt and that this

5    claim is typical of the class.

6          The second issue Defendants raise is whether Norton's UCL claim is barred because she

7    lacks standing.  Specifically, they assert that she "did not lose any money or property as a result of

8    any acts of Defendants."  Opp. at 26; *see Demeter v. Taxi Computer Servs., Inc.*, 21 Cal. App. 5th

9    903, 915 (2018) ("In order to pursue a UCL claim, the plaintiff must show that the practices that it

10   characterizes as unlawful caused it to suffer an actual economic injury." (citation omitted)).  They

11   cite to a report from the sheriff's office of San Mateo County that purports to show that all the

12   money garnished from Norton's wages was returned to her.  Zide Decl., Ex. I.  On reply, Norton

13   submitted paystubs from her job at Sprouts grocery store that seem to indicate that she never

14   received a refund for $113.60 of the amount garnished. Second Norton Decl., Ex. 1.  The court need

15   not decide whether Norton received a full refund of the garnished amount because it is undisputed

16   that her wages were garnished.[7]   Her claim accrued at the moment she paid money to which

17   Defendants were not entitled, notwithstanding any repayment of the sums.  *See Clayworth v. Pfizer,*

18   *Inc.*, 49 Cal. 4th 758, 789 (2010) (finding that the plaintiffs had UCL standing even though they

19   were able to fully mitigate their economic losses because a party's inability to "prove a right to

20   damages . . . does not demonstrate that it lacks standing to argue for its entitlement to them");

21   *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 336 (2011) ("We thus rejected in *Clayworth* the

22   argument that if plaintiffs could demonstrate no compensable losses or entitlement to restitution

23   under section 17203, they would lack standing under section 17204."); *see also Adams v. Mills*, 286

24   U.S. 397, 407 (1932) (finding that the plaintiffs' "claim for damages arose at the time the extra

25   charge was paid" despite subsequent reimbursement).  Accordingly, Norton suffered an economic

26

27   ---

[7] Defendants filed an objection to the evidence Norton submitted on reply.  [Docket No. 89.]
Because it is unnecessary to decide whether Norton was fully reimbursed, the court declines to
28   consider Norton's additional evidence.

loss suitable to confer standing under the UCL.[8]

Defendants have not shown that Norton's claim is subject to unique defenses such that it is not typical of the class.  The court therefore finds that Norton has met the requirements of Rule 23(a)(3).

### 4.    Adequacy

Finally, Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  "To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them." *Hanlon*, 150 F.3d at 1020.  To determine whether the adequacy prong is satisfied, courts consider the following two questions: "(1) [d]o the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (citation omitted).

Defendants' arguments about Norton's adequacy as a class representative are the same arguments they raise with respect to typicality.  The court already rejected those arguments, and there are no other reasons to doubt Norton's adequacy as a class representative.  Defendants do not challenge the adequacy of Norton's counsel, William Kennedy and Natalie Lyons.  Both attorneys submitted declarations attesting to their substantial experience in litigating consumer class action cases. *See* Docket No. 78, Declaration of Natalie Lyons ("Lyons Decl.") ¶¶ 4-6; Kennedy Decl. ¶¶ 3-5.  The court is satisfied that counsel will adequately represent the interests of the class.

### C.    Rule 23(b)

In addition to meeting the prerequisites of Rule 23(a), Norton must meet one of the three requirements of Rule 23(b) to certify the proposed class.  Norton seeks certification of the class under Rule 23(b)(3), which states that a class action may be maintained if "the court finds that the questions of law or fact common to the members of the class predominate over any questions

---

[8] The court previously held that Norton's individual claim for injunctive relief under the UCL expired when Defendants filed the Acknowledgment in her case.  [Docket No. 47 at 21-22.] However, the court determined that Norton could still represent the class for the purposes of seeking injunctive relief. *Id.* at 22.

United States District Court
Northern District of California

affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *See* Fed. R. Civ. P. 23(b)(3). Certification under Rule 23(b)(3) is appropriate "whenever the actual interests of the parties can be served best by settling their differences in a single action." *Hanlon*, 150 F.3d at 1022 (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1777 (2d ed. 1986)).

To meet the predominance requirement of Rule 23(b)(3), "the common questions must be a significant aspect of the case . . . [that] can be resolved for all members of the class in a single adjudication." *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1068 (9th Cir. 2014), *abrogated on other grounds by Microsoft Corp. v. Baker*, 137 S. Ct. 1702 (2017) (quotation omitted). "Considering whether 'questions of law or fact common to class members predominate' begins . . . with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). "In determining whether common questions predominate, the Court identifies the substantive issues related to plaintiff's claims . . . then considers the proof necessary to establish each element of the claim or defense; and considers how these issues would be tried." *Gaudin v. Saxon Mortg. Servs., Inc.*, 297 F.R.D. 417, 426 (N.D. Cal. 2013) (citation omitted). Defendants assert that there are numerous individualized inquiries that overwhelm the common issues in this case, defeating both predominance and superiority. Specifically, they assert that the court will need to review the files of each purported class member to determine whether the debt they incurred was a consumer debt, whether they have standing under the UCL, and whether their claim is barred under the principle of collateral estoppel.

### 1. Nature of the Debts

Defendants rely on *Burton v. Kohn Law Firm, S.C.* for the proposition that "[d]etermining the purposes for which a debt was incurred is necessarily a fact-based, case-specific inquiry." 934 F.3d 572, 580 (7th Cir. 2019); *see also Hansen v. Ticket Track, Inc.*, 280 F. Supp. 2d 1196, 1204 (W.D. Wash. 2003) ("[T]he determination of whether a debt is incurred 'primarily for personal, family, or household purposes' is a fact driven one, and should be decided on a case-by-case . . . basis looking at all relevant factors."). They cite numerous cases where a court granted summary judgment in favor of creditors on the basis that the plaintiff(s) failed to show a triable issue of fact

as to the nature of the debts at issue.  *See, e.g.*, *Burton*, 934 F.3d at 584 (affirming district court's grant of judgment to a creditor where the debtor was "unable to explain whether these transactions were for a consumer as opposed to a business purpose"); *Harris v. Stellar Recovery*, 2015 WL 4041719, at *3 (D. Utah July 1, 2015) (granting summary judgment to a creditor because the plaintiff had no evidence that his debt was for "personal, family, or household purposes"); *Toroussian v. Asset Acceptance, LLC*, 2013 WL 5524831, at *1, 6 (C.D. Cal. Oct. 4, 2013) (same).

In the class certification context, Defendants rely primarily on *Lowe v. Maxwell & Morgan PC*, 322 F.R.D. 393 (D. Ariz. 2017).  In *Lowe*, the putative class members were residents of real property subject to certain home owners' association ("HOA") fees.  *Id.* at 397.  When they failed to pay the fees, the HOA obtained judgments against them and applied for writs of garnishment. *See id.*  The attorneys representing the HOA allegedly included post-judgment fees and costs in their garnishment applications without those amounts being approved by a court.  *Id.*  The plaintiffs sued under the FDCPA and moved for class certification.  The court found that the plaintiffs met the requirements of Rule 23(a).  *Id.* at 399-401.  However, on the Rule 23(b)(3) analysis, the court determined that the plaintiffs did not establish the requirements of predominance and superiority. *Id.* at 402-03.  Primarily, the court noted that HOA fees could be qualifying debts under the FDCPA if the property in question were used for personal, family, or household purposes, but could be commercial in nature if used as a rental property.  *Id.* at 402.  *Lowe* ultimately determined that the predominance requirement was not met because there were too many circumstances unique to each class member, including whether the underlying debts were consumer or commercial in nature; whether the post-judgment fee request was material to the class member; whether the fees sought were contractually or statutorily appropriate under the circumstances of each class member's purchase; and whether any class members had previously litigated the fee issue in state court, raising the possibility of an improper collateral attack.  *Id.* at 402-03.  Similarly, the court determined that a class action was not the superior method for resolving the class members' claims because the "plethora of individualized investigations likely will render classwide resolution unmanageable." *Id.* at 403.  Other courts have also found that the need to determine the nature of each class member's debt precluded class certification.  *See Otomo v. Nevada Ass'n Servs., Inc.*, 2013 WL 1249598, at

18

*8 (D. Nev. Mar. 25, 2013) (finding that the issue which debts qualified under the FDCPA was an "individualized investigation" that weighed against predominance and superiority); *Parker v. George Thompson Ford, Inc.*, 83 F.R.D. 378, 381 (N.D. Ga. 1979) (holding that litigating the nature of each class member's debt would result in "individual trials" unsuitable for class treatment); *Zeltzer v. Carte Blanche Corp.*, 76 F.R.D. 199, 203 (W.D. Pa. 1977) ("[W]here a critical question of fact is wholly individual—i.e., a business or a consumer use of defendant's airline charge plan— I do not think it can be said that class-common questions of law or fact predominate over individual questions requiring individual determinations as to each class member.").[9]

Courts in other districts have reached a different conclusion.  In *Wilkerson v. Bowman*, the court noted that "the need to show that the transactions involved in a particular case are consumer transactions is inherent in every FDCPA class action" and "[i]f that need alone precluded certification, there would be no class actions under the FDCPA."  200 F.R.D. 605, 609 (N.D. Ill. 2001).  Similarly, the court *In re CBC Companies, Inc. Collection Letter Litig.* stated that "it would be impossible to bring a FDCPA class action if there was a chance a possible class member used a credit card for a business purpose. . . . Such a finding would be contrary to the clear remedial goals of the FDCPA."  181 F.R.D. 380, 385 (N.D. Ill. 1998); *see also Gold v. Midland Credit Mgmt., Inc.*, 306 F.R.D. 623, 630 (N.D. Cal. 2014) ("[A]cceptance of Defendants' arguments would effectively eliminate class action litigation under the FDCPA because in all cases, separating out the business debt from the consumer debt would pose a bar to class certification.").  *Wilkerson* also determined that the process of weeding out class members with commercial debts "should be relatively straightforward" because "class members can be asked a single question to determine whether they are entitled to relief."  *Id.* at 610; *see also Gold*, 306 F.R.D. at 629 ("Those potential class members can be further narrowed by use of an appropriately drafted notice or by requiring submission of credit card statements to certify the nature of the financial obligation."); *Butto v. Collecto Inc.*, 290 F.R.D. 372, 383 (E.D.N.Y. 2013) ("The Court does not find it particularly arduous to ask potential

---

[9] Some of these cases were analyzed under the Truth-in-Lending Act, 15 U.S.C. § 1601 *et seq.*, rather than the FDCPA, but that statute similarly requires a showing that the transaction at issue was personal rather than commercial in nature.

United States District Court
Northern District of California

class members the simple question of whether the individual's debt at issue qualifies as a consumer debt."). The court in *Bantolina v. Aloha Motors, Inc.* considered the individualized inquiries necessary to such an investigation and determined that the superiority requirement was still met. 419 F. Supp. 1116, 1122 (D. Haw. 1976) ("[T]his Court does not believe that such a potential complexity is overly serious or overshadows the advantages the class-action device provides in this case."). *Gold*, a published decision in this district, treated the question as one of ascertainability and found that the proposed class—with some modifications to the class definition—was reasonably ascertainable since unqualifying class members could be eliminated through a straightforward notice and claim process. 306 F.R.D. at 630.

Upon consideration of the relevant authority, the court finds the position articulated in *Gold* more persuasive. Determining the nature of each class member's debt will be necessary at some stage of litigation but is not inherently a barrier to class certification. *See Briseno*, 844 F.3d at 1128 (noting the "well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability concerns" (citation omitted)). As other courts have recognized, this dispute will inevitably arise in almost any FDCPA class action (and by extension, cases brought under the Rosenthal Act), so denying class certification on this basis alone would eliminate or severely impair the ability to challenge unfair debt collection practices on a classwide basis.[10] *Briseno*'s core holding was that administrative feasibility cannot be considered in a vacuum; instead, a court must consider the overall costs and benefits of class adjudication given the particular nature of the case. *Id.* at 1128; *see Walker*, 953 F.3d at 633. In the context of credit card collections cases like the current one, requiring each individual to separately litigate the same issue of liability would not serve the purposes of Rule 23. There are a "variety of procedural tools courts can use to manage

---

[10] Defendants note that FDCPA class actions could proceed for certain categories of debts that are clearly consumer in nature, such as medical and student debts. Opp. at 30 n. 23. This position seems to suggest that unfair debt collection practices on delinquent credit cards cannot be challenged on a classwide basis because credit cards are not necessarily consumer in nature. The broad remedial purpose of the FDCPA would not be served by effectively prohibiting class actions based on credit card debt. *See Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1032 (9th Cir. 2012) (finding that the district court abused its discretion in refusing to certify a class without considering the FDCPA's remedial goals); *In re CBC Companies, Inc.*, 181 F.R.D. at 384 (stating that denying class certification "if there was a chance a possible class member used a credit card for a business purpose . . . would be contrary to the clear remedial goals of the FDCPA").

United States District Court
Northern District of California

the administrative burdens of class litigation," including the use of "claim administrators, various auditing processes, sampling for fraud detection, follow-up notices to explain the claims process, and other techniques tailored by the parties and the court."  *Briseno*, 844 F.3d at 1128, 1131.  In FDCPA actions specifically, district courts have suggested numerous methods of identifying qualifying debts without requiring individual mini-trials, and Defendants do not offer convincing arguments that no such methods are available here.[11]  *See, e.g.*, *Gold*, 306 F.R.D. at 629-30 (finding that the class could be appropriately narrowed by removing debts assumed under the name of a business, using a notice and claims process, or by requiring submissions of credit card statements); *Irwin*, 96 F. Supp. 2d at 973 (determining that "[i]t would be possible to identify checks written for commercial purchases and distinguish them from those written for consumer purchases"); *Macarz v. Transworld Sys., Inc.*, 193 F.R.D. 46, 57 (D. Conn. 2000) ("[A]ny disputes regarding whether a particular class member's debt is consumer or commercial can be remedied through proper drafting of the claim form, and at the damages phase of this case.").  In addition, the estimated number of potential class members is relatively low, which provides further support than any individual issues of proof will not outweigh the benefits of class adjudication.

Further, this court previously explained that requiring debtors to make a strong initial showing about the nature of their debt "could incentivize creditors to conceal the nature of the debts they are attempting to collect in order to prevent debtors from discovering sufficient factual information to adequately contest unfair debt collection practices."  Docket No. 47 at 8.  Denying class certification on the basis that debt collection agencies do not collect or maintain evidence about the underlying nature of the debts would only further encourage opaque debt collection practices.  *See Gold*, 306 F.R.D. at 630 ("[T]he mere fact that the debt collection agency does not segregate business and consumer debt accounts is not enough to thwart class certification."); *Irwin v. Mascott*,

---

[11] Defendants argue that some of the solutions proposed in other cases, such as submissions of credit card statements, are not feasible here because of the age of the debts.  Opp. at 30.  This argument is not convincing since there are other methods of determining class membership, including the traditional notice and claims process.  *See Briseno*, 844 F.3d at 1132 ("If the concern is that claimants in cases like this will eventually offer only a 'self-serving affidavit' as proof of class membership, it is again unclear why that issue must be resolved at the class certification stage to protect a defendant's due process rights.").

96 F. Supp. 2d 968, 973 (N.D. Cal. 1999) ("The fact that defendants do not maintain information that allows a precise determination of the nature of each purchase should not be a bar to proceeding under the FDCPA.").

For all of the above reasons, the court finds that the administrative feasibility of identifying class members does not defeat certification under Rule 23(b)(3).

### 2.      UCL Standing

Defendants argue that individualized inquiries will be required to determine whether each potential class member suffered an economic loss sufficient to confer UCL standing.  Opp. at 31. This argument is not convincing.  LVNV's interrogatory responses indicate that Defendants have records about the judgments H&Z attempted to enforce without filing an acknowledgment of assignment with the state court, including the specific dollar amounts that were garnished or levied as a result.  *See* Kennedy Decl., Ex. 1, Interrogatories 12, 14 at 8-10.  Defendants do not explain how it would be burdensome to identify judgments that did not result in any garnishment activity for the purposes of eliminating class members without standing.

### 3.      Collateral Estoppel

Finally, Defendants assert that the claims of some class will be barred by the principle of collateral estoppel because some of the judgments at issue were renewed without objection by potential class members.   They argue that identifying which claims are barred is another individualized inquiry that defeats predominance in this case.

Under California law, a judgment creditor "may renew a judgment by filing an application for renewal of the judgment with the court in which the judgment was entered."  Cal. Code Civ. Proc. § 683.120(a).  Renewal extends the period of enforceability for a judgment beyond the default ten years.  *See* Cal. Code Civ. Proc. § 683.020.  Once a renewal is entered by the court, the creditor must notify the debtor, who then has thirty days to object.  Cal. Code Civ. Proc. §§ 683.160(a), 683.170(b).  In *Popa v. Winn Law Grp., APC*, a plaintiff debtor asserted that a law firm violated the FDCPA and Rosenthal Act by listing the original judgment creditor, rather than the assignee, as the plaintiff on a request to renew a judgment.  2019 WL 289832 (C.D. Cal. Jan. 23, 2019).  The court found that the plaintiff's claim was barred by the principle of collateral estoppel because he did not

United States District Court
Northern District of California

object to the renewal of the judgment within the time period permitted by statute, and he could not subsequently bring a FDCPA claim premised on the same alleged wrongdoing.  *Id.* at *2-3.

In this case, Defendants assert that the judgments against many potential class members were renewed.  Opp. at 31; s*ee* Zide Decl. ¶ 19.  They argue that under *Popa*, those class members already had the opportunity to object to the renewal of the judgments on the basis that H&Z improperly listed Arrow as the plaintiff.  According to Defendants, such class members are now estopped from challenging the unlawful conduct because they could have done so when they were notified of the renewals.  This argument is not convincing.  The alleged FDCPA violations in this case are not based on whether the initial judgments are valid or whether Defendants were entitled to renew those judgments.  Instead, Norton alleges that Defendants violated the FDCPA by attempting to *enforce* judgments without filing an acknowledgment of assignment as required by section 673.  As explained in the court's order on Defendant's second motion to dismiss, each enforcement action Defendants took without filing an acknowledgment was a distinct legal act that could serve as the basis for a FDCPA claim.  *See* Docket No. 47 at 12-15.  Accordingly, whether any class members are estopped from arguing that Defendants' renewal of their judgment was a separate FDCPA violation is not at issue here.

In sum, this case invokes common questions of law and fact about whether Defendants violated the FDCPA by enforcing judgments without complying with section 673.  For the reasons stated above, the court finds that the issues common to the class predominate over any individual questions.  Defendants do not raise any separate arguments about superiority, and the court finds that this requirement is also met.  *See McLeod v. Bank of Am., N.A.*, No. 16-CV-03294-EMC, 2017 WL 6373020, at *16 (N.D. Cal. Dec. 13, 2017) ("That common questions predominate demonstrates that a class action would be a superior method of adjudication." (citations omitted)); *see also Hunt v. Check Recovery Sys., Inc.*, 241 F.R.D. 505, 514–15 (N.D. Cal. 2007) (determining that FDCPA actions are well-suited for class treatment because individual claimants are "most likely unaware of their rights under the FDCPA," and "the size of any individual damages claims under the FDCPA are usually so small that there is little incentive to sue individually."); *Gold*, 2014 WL 5026270, *9 ("[I]ndividual recovery [under the FDCPA] is small, and resorting to alternative mechanisms

23

1  would be unduly inefficient.").

2  **V.      CONCLUSION**

3      For the foregoing reasons, Norton's motion for class certification is granted.  Norton is

4  appointed as Class Representative.  Kennedy and Lyons are appointed as Class Counsel.

5

6

7

8      **IT IS SO ORDERED.**

9  Dated: October 6, 2020

10

11



12

13

14

_____
Donna M. Ryu
United States Magistrate Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28