1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6
7
8
9
10
11

| | |
|---|---|
| SONYA NORTON, | Case No.  18-cv-05051-DMR |
| Plaintiff, | |
| v. | **ORDER ON MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| LVNV FUNDING, LLC, et al., | Re: Dkt. No. 118 |
| Defendants. | |

12      Plaintiff Sonya Norton filed this putative class action against Defendants LVNV Funding,

13  LLC ("LVNV") and Law Office of Harris & Zide ("H&Z") alleging violations of the federal Fair

14  Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and California's Fair Debt

15  Collection Practices Act ("Rosenthal Act"), California Civil Code § 1788 *et seq.*  Norton also seeks

16  injunctive relief under California's Unfair Competition Law ("UCL"), California Business and

17  Professions Code § 17200 *et seq.*  The parties seek preliminary approval of a class action settlement.

18  The court held a hearing on April 22, 2021.  Following the hearing, Plaintiff withdrew the motion

19  for preliminary approval so that the parties could renegotiate certain aspects of the settlement

20  agreement.  Plaintiff then filed a revised motion for preliminary approval.  [Docket No. 132

21  ("Mot.").]  The court held a hearing on the new motion for preliminary approval on July 8, 2021.

22      For the reasons stated below, the motion for preliminary approval is granted.

23  **I.    BACKGROUND**

24      **A.    Allegations and Claims**

25      On October 21, 2008, non-party Arrow Financial Services, LLC ("Arrow") filed a

26  collections action against Norton in San Mateo County Superior Court, alleging that Norton failed

27  to tender owed amounts to Arrow.  *See* Docket No. 48, Third Amended Complaint ("TAC") ¶ 14.

28  On December 26, 2008, the state court entered a default judgment against Norton in the amount of

United States District Court<br>Northern District of California

$3,986.60.  *Id.* ¶ 15.  On February 24, 2012, H&Z filed a substitution of counsel to appear on behalf of Arrow in the state court action.  *Id.* ¶ 16; *Id.*, Ex. 2.  On May 17, 2012, H&Z caused a writ of execution to issue from a state court in the amount of $5,853.07.  *Id.* ¶ 17.  Norton's wages were garnished in the amount of $323.55 in August and September 2012. *Id.*  Defendants sought and obtained five more writs of execution between December 27, 2013 and September 1, 2017.  *Id.* ¶¶ 17-25.  On November 29, 2017, Norton filed a claim of exemption in response to the garnishment of her wages. *Id.* at ¶ 30.  Through December 2017, Defendants allegedly garnished over $1,000 from Norton's paycheck.  *Id.* ¶¶ 31-32.  On December 15, 2017, an attorney at Housing and Economic Rights Advocates ("HERA") wrote a letter to H&Z on Norton's behalf stating that the wage garnishment appeared to be improper because, unknown to Norton, Arrow had filed a Certificate of Cancellation with the California Secretary of State in October 10, 2012. *Id.* ¶ 37. No other party had established itself as Arrow's assignee of record.  *Id.*  H&Z subsequently filed a notice terminating the garnishment of Norton's wages.  *Id.*  Norton was "reimbursed some, but not all" of her garnished wages.  *Id.* ¶ 39.

    On February 13, 2018, an H&Z attorney informed Norton's attorney at HERA that H&Z represented LVNV rather than Arrow.  *Id.* ¶ 36.  According to Norton, LVNV had acquired the judgment against her from Arrow in 2012 but did not disclose this fact to the state court or to Norton until 2018. *Id.* ¶¶ 41-43.  On May 11, 2018, Norton filed a motion in the state court action to quash the prior writs of execution.  *Id.* ¶ 40.  On June 29, 2018, the court granted the unopposed motion on the grounds that "no acknowledgment of assignment of judgment has been filed as required by Code of Civil Procedure § 673."  *Id.*  On September 7, 2018, H&Z filed an Acknowledgment of Assignment of Judgment in the state court action pursuant to California Code of Civil Procedure § 673; it acknowledges the assignment of the judgment against Norton from Arrow to LVNV. [Docket No. 37-1, Ex. B.]

    In this lawsuit, Norton contends that Defendants were prohibited from taking judicial action to enforce the judgment without first complying with section 673.  She asserts individual and class claims under the FDCPA, the Rosenthal Act, and the UCL.

1

**B.     Procedural History**

Norton filed a first amended complaint as of right on August 27, 2018.  [Docket No. 5.]  On October 12, 2018, Defendants moved to dismiss the first amended complaint.  [Docket No. 12.]  The court granted in part and denied in part the motion.  [Docket No. 30.]  Norton filed a second amended complaint on March 18, 2019, which Defendants again moved to dismiss.  [Docket Nos. 33, 37.]  The court granted in part and denied in part the second motion to dismiss.  [Docket No. 47.]  Norton filed the operative complaint on September 10, 2019.  [Docket No. 48.]  On March 4, 2020, LVNV filed a motion to amend its answer to the TAC to add setoff as an affirmative defense.  [Docket No. 82.]  On May 19, 2020, the court granted the motion.  [Docket No. 92.]  LVNV filed an amended answer to the TAC on June 10, 2020.  [Docket No. 93.]

On October 6, 2020, the court certified a class encompassing all California residents who meet the following conditions:

> a.   LVNV Funding, LLC, represented by Law Office of Harris & Zide, took judicial action (including obtaining Writs of Execution, wage garnishment, and bank levy) after August 17, 2014 (four years prior to the filing of this action) to collect a judgment based on a consumer debt obtained in a California court;
>
> b.   Arrow Financial Services, LLC was the plaintiff of record at the time the judgment was entered; and
>
> c.   LVNV Funding, LLC did not file an Assignment of Judgment in conformity with California Code of Civil Procedure § 673 or otherwise become the assignee of record.

[Docket No. 103, Order on Class Certification at 4.]  The four-year class period corresponds to the four-year statute of limitations for UCL claims.  The court also certified a subclass ("Subclass") defined identically to the Class except the class period is limited to August 17, 2017 to the present, corresponding to the one-year statute of limitations applicable to the Rosenthal Act and the FDCPA.  On December 15, 2020, the Ninth Circuit Court of Appeals denied Defendants' petition for permission to appeal the class certification order.  [Docket No. 113.]

The parties participated in two mediation sessions.  [Docket No. 136, Declaration of William Kennedy ("Kennedy Decl.") ¶ 4.]  The first was held on February 12, 2020 with mediator Peter

1   Borkon and the second took place on November 13, 2020 with mediator Celia McGuinness.  *Id.*

2   The parties reached a settlement in principle on December 17, 2020.  *Id.*

3         Norton filed a first motion for preliminary approval on March 11, 2021.  [Docket No. 118.]

4   The court held a hearing on the motion on April 22, 2021.  During the hearing, the court raised

5   several concerns about the settlement.  The parties agreed to withdraw the motion and renegotiate

6   certain terms.  Norton submitted the finalized agreement with the current motion.  Kennedy Decl.,

7   Ex. 1 ("Agreement").  The court held a hearing on the new motion for preliminary approval on July

8   8, 2021.

9   **II.       TERMS OF THE SETTLEMENT**

10        **A.     Relief**

11        The Agreement contains the following material terms.  Defendants estimate that there are

12  481 Class Members and 276 Subclass Members.  Agreement § 4.01.  Defendants have collected a

13  total of $653,143.19 from Class Members through judicial action, including by obtaining writs of

14  execution, wage garnishment, and bank levy.  *Id.*  Each Class Member, upon submitting a valid

15  claim, will receive "the total amount collected from them by or on behalf of Defendants through

16  judicial action to enforce the judgment entered against them and in favor of Arrow, including all

17  costs collected, plus seven (7) percent interest on all amounts collected to be calculated from the

18  date of collection by Defendants."  *Id.* § 4.03.  In addition, Subclass Members who submit a valid

19  claim will receive a *pro rata* share of $50,000.00.  *Id.* §§ 4.02-4.03.

20        The Agreement also provides for relief that does not require the submission of a claim form.

21  Defendants have incurred a total of $169,904.00 in court costs in connection with their debt

22  collection actions.   Agreement § 4.01.   For judgments against Class Members with "open"

23  accounts,[1] the Agreement provides that Defendants will delete all court costs and interest accrued

24  on those costs from their system.  *Id.* § 4.04.  Defendants will not attempt to collect on those amounts

25  or sell the right to collect on them.  *Id.*  Defendants represent that 112 Class Members have open

26  _____

27  [1] The Agreement defines an "Open Account" as "a judgment entered against a Class Member on
    which Defendants' internal files reflect that attempts to collect have not ceased as of January 20,

28  2021."  Agreement § 1.33.

United States District Court<br>Northern District of California

accounts.  *Id.*  For judgments against Class Members with "closed" accounts,[2] Defendants "will make no further efforts to collect the balances owed pursuant to those judgments, and LVNV (the owner of the judgments), will not sell or transfer those judgments."  *Id.*  Defendants represent that 342 Class Members have closed accounts.  *Id.*

### B.   Notice

Class Members will receive the Class Notice by mail.  *See* Agreement, Ex. A.  The Notice informs the recipients that they are potential Class Members in this case because Defendants attempted to collect a court judgment against them without first becoming an "assignee of record" under California law.  The Notice informs each recipient of the amount of money Defendants collected from them.  It explains that this amount will be returned to them if they submit a valid Claim Form confirming that the debt Defendants attempted to collect on was a "consumer debt."  The Notice also states whether the Class Member is a member of the Subclass and if so, that they are also entitled to a *pro rata* share of $50,000.  The Notice explains the recipient's various legal options with respect to this case, including submitting a Claim Form, requesting exclusion, objecting, attending the court hearing, or doing nothing.  It also informs the Class Members that they have 75 days to fill out and return the Claim Form to receive any cash benefits from the settlement.

### C.   Claim Form

In order to receive the monetary benefits described above, Class Members must submit a Claim Form.  *See* Agreement, Ex. B.  The Claim Form explains what "consumer debt" means and provides examples.   The form asks, "Was the financial obligation you were sued for by Arrow a 'consumer debt?'" and provides three answer options: "Yes," "No," and "I don't know."  It then explains that checking "Yes" will entitle the Class Member to the return of the money that was collected from them, plus interest.  The Claim Form also advises the recipient whether they are a member of the Subclass, and if so, that checking "Yes" will entitle them to a share of $50,000.   The

---

[2] The Agreement defines a "Closed Account" as "a judgment against a Class Member on which Defendants' internal files reflect that attempts to collect have ceased as of January 20, 2021." Agreement § 1.15.

Claim Form also requests the claimant's name, address, and last four digits of their Social Security Number and provides contact information for Class counsel and the Class Administrator.

### D.    Settlement Administration

CPT Group, Inc. will be the settlement administrator.  Agreement § 5.01.  The Administrator is responsible for (1) providing any notice required by the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715; (2) mailing the Class Notice; and (3) administering the settlement website, Claim Forms, and all payments required under the Agreement.  *Id.* § 5.02.  Defendants will be jointly responsible for paying all notice and administrative costs, and all funds necessary for the Administrator to make payments to valid claimants.  *Id.* § 5.01.

***Class Notice.***  Defendants will provide a list of all potential Class Members to the Administrator within 15 days of the court issuing an order of preliminary approval.  Agreement § 5.05(1).  The list will include each potential Class Member's last known address, telephone number, email address, and the last four numbers of each Class Member's Social Security number.  *Id.*  The list will also identify which potential Class Members are also potential Subclass Members.  *Id.*  The Administrator will check the addresses provided against the National Change of Address registry and may perform a skip trace using the Accurint database to determine the most current address for Class Members.  *Id.* § 5.05(2).  The Administrator will send the Notice by first-class U.S. Mail to Class Members within sixty days of the date of preliminary approval.  *Id.* § 5.05(3).  If any Notices are returned with a forwarding address, the Administrator will re-mail the Notice and Claim Form to the Class Member at the forwarding address.  *Id.* § 5.05(2).  If any Notice is returned as undelivered, the Administrator will perform a skip trace and re-mail the Notice to any new or different address identified by the Accurint database.  *Id.*

***Settlement Website.***  By the deadline to send the Notice, the Administrator will create a settlement website that will provide information about the settlement and the process for submitting Claim Forms.  Agreement § 5.03.  The website will allow claimants to complete the Claim Form online or to email an image of the Claim Form.  *Id.*  The website will also provide the relevant litigation documents, including the Agreement, the motion for preliminary approval, Plaintiff's motion for attorneys' fees, the motion for final approval, and the operative complaint and

Defendants' respective answers. *Id.* The Administrator will also maintain a telephone number that Class Members can call for further information. *Id.* § 5.04.

*Claim Forms.* The Administrator will review the received Claim Forms and confirm that each is timely submitted and in the correct form. Agreement § 5.06. The Administrator will also confirm that each person submitting a Claim Form is a member of the Class and, where applicable, the Subclass. *Id.* Within 10 days after the deadline to respond to the Notice, the Administrator will provide counsel for both sides with a list of all Class and Subclass Members who filed a Claim Form, and will indicate whether the Claim Form was rejected or accepted. *Id.* § 5.07. The Administrator will explain why it accepted or rejected each Claim Form and will make available to counsel for both sides any documentation that supports the determination. *Id.* If either side disagrees with the determination, counsel for both sides will meet and confer to attempt to reach a resolution. *Id.* § 5.08. If they cannot reach an agreement on how to treat a disputed Claim Form, they will jointly raise the issue with the court in the motion for final approval. *Id.*

*Payments.* Counsel for both sides will confer with respect to the appropriate payment to each claimant. Agreement § 5.18. The check payments will only be negotiable for 90 days, which will be noted on the checks. *Id.* Within 45 days after final settlement is entered, the Administrator will issue checks for the appropriate amount to claimants. *Id.* §§ 1.22; 5.18. Class Members who do not cash their checks within 90 days will be ineligible to receive any payment under the Agreement but will still be bound by the release of claims. *Id.* § 5.19. The aggregate amount of any uncashed checks will be distributed to the *cy pres* recipient, the Katharine & George Alexander Community Law Center in San Jose, California. *Id.* § 5.20.

E.      Opt Outs and Objections

Potential Class Members may choose to exclude themselves from the Class by sending the Administrator a written statement that includes (1) the name and address of the person requesting exclusion; (2) the individual's signature; and (3) a statement that "reasonably indicates a desire to be excluded from the Settlement." Agreement § 5.10. Class Members who opt out will not receive any payment under the Agreement. *Id.* § 5.11. The Administrator will provide copies of all valid opt-out forms to counsel for both sides within 10 days after the deadline to respond to the Class

United States District Court
Northern District of California

1     Notice. *Id.* § 5.12.

2         Potential Class Members may also choose to object to the Agreement without excluding

3     themselves from the Class. Agreement § 5.14. Class Members who do not file and serve timely

4     written objections will be deemed to have waived any objections and will be foreclosed from making

5     any objections (by appeal or otherwise) to the Agreement. *Id.* § 5.17.

6         **F.**    **Incentive Award**

7         Norton intends to make an application to the court for an incentive award of up to $7,000.

8     Agreement § 6.01. Defendants agree to not oppose the application as long as it does not exceed

9     $2,000 but reserve their right to oppose any application for a greater amount. *Id.* Defendants will

10    be jointly liable for any incentive award approved by the court. *Id.* While Norton is entitled to the

11    other benefits provided by the Agreement, she will not receive any of the $50,000 that is to be

12    distributed to Subclass Members. *Id.* § 6.02.

13        **G.**    **Attorneys' Fees**

14         Class counsel intend to file a motion for attorneys' fees and costs for an amount not to exceed

15    $241,426.58, representing $239,373.00 in attorneys' fees and $2,053.58 in costs. Agreement § 7.01.

16    Defendants will not oppose the application as long as it does not request a greater amount. *Id.* The

17    attorneys' fees award will be paid separate and apart from payments to the Class and will not reduce

18    the total amount awarded under the Agreement. *Id.* § 7.03.

19   **III.**    **PRELIMINARY APPROVAL**

20         "The Ninth Circuit maintains a 'strong judicial policy' that favors the settlement of class

21    actions." *McKnight v. Uber Techs., Inc.*, No. 14-cv-05615-JST, 2017 WL 3427985, at *2 (N.D.

22    Cal. Aug. 7, 2017) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

23    The settlement of a certified class action must be "fair, reasonable, and adequate." Fed. R. Civ. P.

24    23(e)(2). "The court's role in reviewing a proposed settlement is to represent those class members

25    who were not parties to the settlement negotiations and agreement." *Tadepalli v. Uber Techs., Inc.*,

26    No. 15-cv-04348-MEJ, 2016 WL 1622881, at *6 (N.D. Cal. Apr. 25, 2016). At the preliminary

27    approval state, the court's role is to assess whether the settlement "falls within the range of possible

28    approval." *Terry v. Hoovestol, Inc.*, No. 16-cv-05183-JST, 2018 WL 4283420, at *1 (N.D. Cal.

United States District Court
Northern District of California

Sept. 7, 2018) (internal quotation marks and further citations omitted).

The court will look to two authorities in deciding whether to grant preliminary approval: the fairness factors set forth in *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) and the factors in Rule 23(e)(2). "The relative degree of importance to be attached to any particular factor will depend upon . . . the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). The court will also consider the Northern District of California's Procedural Guidance for Class Action Settlements.[3]

**A.    *Churchill* Factors**

A class action "may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). The "decision to approve or reject a settlement is committed to the sound discretion of the trial judge because [s]he is exposed to the litigants, and their strategies, positions, and proof." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000), *as amended* (June 19, 2000) (citation omitted). The district court's role in reviewing proposed class action settlements is to determine whether a settlement is "fundamentally fair, adequate, and reasonable." *Id.* The court is tasked with balancing a number of factors, including:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill*, 361 F.3d at 575.

**1.    Strength of Plaintiff's Case and Risks of Litigation**

The first three factors are addressed together and require the court to assess the plaintiff's "likelihood of success on the merits and the range of possible recovery" versus the risks of continued litigation and maintaining class action status through the duration of the trial. *See Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365-CW, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010).

---

[3] Available at https://www.cand.uscourts.gov/ClassActionSettlementGuidance.

1    However, the court need not "reach any ultimate conclusions on the contested issues of fact and law

2    which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and

3    avoidance of wasteful and expensive litigation that induce consensual settlements." *Officers for*

4    *Justice*, 688 F.2d at 625.  These factors weigh in favor of approving settlement when the defendant

5    has "plausible defenses that could have ultimately left class members with a reduced or non-existent

6    recovery." *In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 999 (N.D. Cal. 2015).

7            These factors weigh in favor of preliminary approval.  Norton's claims survived two rounds

8    of briefing on the pleadings as well as class certification, indicating that the case has some weight

9    and could have achieved a favorable result at trial.  However, Defendants raise several affirmative

10   defenses that could have reduced or eliminated relief to the Class.  First, Defendants argue that they

11   are entitled to setoff any amounts returned to Plaintiff or the putative class.  *See* Docket No. 92,

12   Order Granting Defendant LVNV's Motion to Amend the Answer at 2.  "Setoff" is a defense by

13   which a defendant may seek to offset sums owed to a plaintiff against sums owed by the plaintiff to

14   the defendant.  *See Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1398 (9th Cir. 1996).

15   In LVNV's motion to amend its answer to add setoff as an affirmative defense, LVNV explained

16   that it holds valid judgments against Norton and the putative Class Members and it would be entitled

17   to setoff any amount LVNV owes to Class Members by the amounts Class Members owe to LVNV.

18   *See* Docket No. 82 at 1-2.  Norton disputes that a setoff defense would be applicable to her claims

19   but acknowledges that she is not aware of any caselaw that applies these arguments to violations of

20   section 673.  Mot. at 10.  Norton also opposed LVNV's motion to amend its answer to add setoff as

21   a defense.  *See* Docket No. 84.  Thus, there appears to be a genuine dispute that increased the risks

22   of continued litigation.

23           Second, Defendants argue that they are entitled to invoke the FDCPA's "bona fide" error

24   defense, which states:

25           A debt collector may not be held liable in any action brought under this
             subchapter if the debt collector shows by a preponderance of evidence that
26           the violation was not intentional and resulted from a bona fide error
             notwithstanding the maintenance of procedures reasonably adapted to avoid
27           any such error.

28

United States District Court
Northern District of California

15 U.S.C. § 1692k(c).  The Rosenthal Act similarly excuses unintentional violations where a debt collector maintains procedures reasonably adapted to avoid any such violation."  Cal. Civ. Code § 1788.30(e).  In the July 8, 2021 hearing, Defendants represented that the violations underlying this case were unintentional and that they had procedures in place to ensure that their collection efforts were lawful.  Norton asserted that the bona fide error defense would not apply in this case because Defendants did not have any specific procedures to prevent the error that actually occurred.  The parties' competing interpretations of provisions that could eliminate any recovery provide support for the reasonableness of the settling the claims in this case.

Finally, Defendants contend that Norton has no evidence that the judgments of Class Members arose from "consumer debts," which is an essential element of the Subclass's claims under the FDCPA and Rosenthal Act.  Mot. at 10.  The nature of each Class Member's debt has been highly contested in this action, as detailed in the court's class certification order.  *See* Docket No. 103.  While this defense would only bar recovery for Class Members whose debt did not arise from consumer actions, the claims process proposed by the parties potentially eliminates more complicated and costly methods of adjudicating that issue.

### 2.    Amount Offered in Settlement

The fourth *Churchill* factor, which looks at the amount of recovery offered in settlement, favors preliminary approval.  When considering whether the amount offered in settlement is fair and adequate, "[i]t is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness."  *Officers for Justice*, 688 F.2d at 628.  In addition, "it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial."  *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004).

In this case, the Agreement provides for relief in the forms of (1) reimbursement, with interest, of all amounts Defendants collected from Class Members; (2) a total of $50,000 to be distributed to Subclass Members on a *pro rata* basis; (3) withdrawal of all claimed court costs and interest on court costs for open accounts; and (4) complete cessation of collection activity on closed accounts.

1    ***Actual Damages.***  The FDCPA allows for recovery of actual damages resulting from a debt

2    collector's failure to comply with fair debt collection practices.  15 U.S.C. § 1692k(a)(1).  The

3    Rosenthal Act incorporates FDCPA remedies.  Cal. Civ. Code § 1788.17 ("[E]very debt collector

4    collecting or attempting to collect a consumer debt . . . shall be subject to the remedies in [15 U.S.C.

5    § 1692k].").  The Agreement provides for a full reimbursement, with interest, to all Class Members

6    from whom Defendants collected payments without complying with section 673.  The court noted

7    in the first hearing that the Agreement does not prevent Defendants from filing an assignment and

8    continuing to collect on open accounts.  However, the ability of Defendants to re-collect some of

9    the funds distributed does not weigh against preliminary approval.  For one thing, only about one

10   quarter of all Class Members have open accounts.  Thus, most Class Members will not be subject

11   to further collection efforts.  Additionally, the parties agree that the underlying judgments for the

12   debts at issue are valid, so even if Norton succeeded at trial, Defendants could simply file the

13   required assignments for each Class Member and continue collecting on their account.  Since the

14   Agreement does not reduce any Class Member's recovery below what it would be after a successful

15   trial, the actual damages awarded under the Agreement are reasonable.

16   ***Statutory Damages***.  The FDCPA (and, by incorporation, the Rosenthal Act) allows for

17   recovery of statutory damages up to $1,000 for an individual or—in the case of a class action—up

18   to $1,000 for each named plaintiff and "such amount as the court may allow for all other class

19   members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or

20   1 per centum of the net worth of the debt collector."  15 U.S.C. § 1692k(a)(2)(A)-(B).  In deciding

21   whether to exercise its discretion to award statutory damages under section 1692k, a court must

22   consider "the frequency and persistence of noncompliance by the debt collector, the nature of such

23   noncompliance, the resources of the debt collector, the number of persons adversely affected, and

24   the extent to which the debt collector's noncompliance was intentional."  15 U.S.C. § 1692k(b)(2).

25   Here, the Agreement provides for a total of $50,000 in statutory damages.  The amount will

26   be divided equally between all Subclass Members who submit a valid Claim Form.  Defendants

27   estimate that there are 276 Subclass Members.  Agreement § 4.02.  Thus, if all Subclass Members

28   submit a valid Claim Form, each claimant will receive approximately $181.16 in addition to any

reimbursement amounts they are owed.  In the first hearing, the court noted that there was nothing in the record about Defendants' net worth so it was not possible to determine the maximum amount of statutory damages that can be awarded.  It ordered Plaintiff to file under seal all the documents they relied on in assessing Defendants' net worth as well as a declaration explaining the calculations. Plaintiff did so.  [Docket No. 123.]  The documents submitted by Plaintiff indicate that 1% of Defendants' net worth, rather than $500,000, is the correct cap on statutory damages.  While the statutory damages awarded under the Agreement are lower than the statutory maximum, the difference is not large.  Considering that an award of statutory damages is discretionary, a minor discount from the statutory maximum does not weigh against preliminary approval.

*Other Relief.*  In addition to reimbursement and statutory damages, the Agreement provides that Defendants will delete all court costs and the interest thereon for open accounts and will not attempt to collect those costs.  Defendants estimate that they have incurred $169,904.00 in court costs in connection with their debt collection actions.  Agreement § 4.01.  Defendants also agree to make no further efforts to collect on closed accounts.  *Id.* § 4.04.

In sum, the Agreement provides for a full payment of actual damages as well as a substantial percentage of the maximum statutory damages. The court therefore finds that the relief offered by the Agreement is fair and reasonable.

### 3.    Stage of Proceedings

Class settlements are presumed fair when they are reached "following sufficient discovery and genuine arms-length negotiation." *DIRECTV, Inc.,* 221 F.R.D. at 528; 4 Newberg at § 11.24. "The extent of discovery [also] may be relevant in determining the adequacy of the parties' knowledge of the case." *DIRECTV*, 221 F.R.D. at 527 (quoting *Manual for Complex Litigation, Third* § 30.42 (1995)).  "A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case."  *Id.* (quoting 5 *Moore's Federal Practice*, §23.85[2][e] (Matthew Bender 3d ed.)).  However, "[i]n the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, 'formal discovery is not a necessary ticket to the bargaining table.'"  *Wilson v. Tesla, Inc.*, No. 17-

United States District Court
Northern District of California

1   cv-03763-JSC, 2019 WL 2929988, at *8 (N.D. Cal. July 8, 2019) (quoting *Linney v. Cellular Alaska*

2   *P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)).

3         In this case, both parties propounded and responded to written discovery.  Kennedy Decl. ¶

4   3.  Defendants produced at least 325 pages of documents and deposed Norton.  *Id.*  The depositions

5   of Defendants' Rule 30(b)(6) witnesses were calendared but did not occur due to settlement.  *Id.*

6   Although the number of documents produced is relatively small given the size of the class, the court

7   concludes that the discovery conducted is sufficient for this relatively straightforward case involving

8   a single statutory violation.  Defendants were able to identify all Class Members, including the

9   current status of collection efforts for each account.  Norton's theory of liability and Defendants'

10  primary defense of setoff do not appear to rely on fact-specific inquiries, which allows the parties

11  to evaluate the strength of the claims without extensive discovery.

12        The court finds that the parties adequately investigated the claims and defenses in this case

13  and that the parties had enough information to make an informed decision about settlement.

### 4.      Experience and Views of Counsel

15         The Class is represented by counsel at the Consumer Law Office of William E. Kennedy

16  and Housing and Economic Rights Advocates.  The court previously considered the experience of

17  counsel in granting Norton's motion for class certification.  *See* Order on Class Certification at 16.

18  The court determined that counsel William Kennedy and Natalie Lyons both have "substantial

19  experience in litigating consumer class action cases" and concluded that "counsel will adequately

20  represent the interests of the class."  *Id.*  There are no apparent reasons to reconsider that decision.

21        The court is satisfied that Class counsel have provided adequate representation on behalf of

22  the class.

### 5.      Government Participant

24        This factor is inapplicable because there is no government participant in this case.  *See*

25  *Mendoza v. Hyundai Motor Co., Ltd*, No. 15-cv-01685-BLF, 2017 WL 342059, at *7 (N.D. Cal.

26  Jan. 23, 2017).

### 6.      Reaction of Class Members

28        The reaction of the class members is best assessed at the final approval hearing since the

United States District Court
Northern District of California

14

court can look at how many class members submitted Claim Forms and objections.  *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (affirming approval of a class action settlement where there were 54 objections out of 376,301 notices sent).  Therefore, this factor should not be considered for the purposes of preliminary approval.

### B.      Rule 23(e) Factors

Rule 23(e) requires the court to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e).

### 1.      Adequacy of Representation

In determining whether to approve a class action settlement, a court must consider whether "the class representatives and class counsel have adequately represented the class."  Fed. R. Civ. P. 23(e)(2)(A).

### a.      Class Representative

Norton has actively participated in the prosecution of this case.  [Docket No. 132-3, Declaration of Sonya Norton ("Norton Decl.").]  She sat for a deposition in February 2020 and also attended both mediation sessions.  *Id.* ¶¶ 3-5.  Throughout the litigation, she has been "[in] frequent contact with [her] attorneys, providing them information and documents as needed."  The court previously determined that there are "no . . . reasons to doubt Norton's adequacy as a class representative."  Order on Class Certification at 16.  As described above, Class counsel are experienced and competent, which is another indication that Norton has adequately represented the class.  *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) ("Parties represented by

15

competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.").

The court finds that this factor is satisfied.

### b. Class Counsel

The experience of counsel is discussed in Section III.A.4, *supra*.

### 2. Non-Collusive Negotiations

The Ninth Circuit has laid out three factors to consider when determining whether there are signs that class counsel "have allowed pursuit of their own self-interests . . . to infect the negotiations." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). These are (1) "when counsel receive a disproportionate distribution of the settlement or when the class receives no monetary distribution but class counsel are amply rewarded"; (2) when the payment of attorneys' fees is "separate and apart from class funds"; and (3) when the parties arrange for benefits that are not awarded to revert to the defendants rather than being added to the class fund. *Id.* However, the level of scrutiny applied to this factor is diminished once a class has been certified. *See id.* at 946-47.

The first factor is not present here. The Class will receive up to $653,143.19, plus interest, in reimbursements and $50,000 more in statutory remedies. Defendants will relinquish their claims to $169,904.00 in court costs. By comparison, Class counsel request $241,426.58 in attorneys' fees, which is within the range of a reasonable fee award. *See infra* Section III.B.3. At this stage, it does not appear that counsel will receive a disproportionate share of the settlement.

The second *Bluetooth* factor refers to a "clear sailing" arrangement, where the attorneys' fees are paid separately from the class fund, "which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class." *Bluetooth*, 654 F.3d at 947 (internal quotation marks omitted). There is a clear sailing provision in this case, as the settlement agreement states that Defendants will not oppose Norton seeking fees up to $241,426.58. Agreement § 7.01. "[W]hen confronted with a clear sailing provision, the district court has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class, being careful to avoid

United States District Court
Northern District of California

United States District Court
Northern District of California

awarding 'unreasonably high' fees simply because they are uncontested." *Bluetooth*, 654 F.3d at 948.  This one warning sign is not necessarily enough to prove collusion, depending on the other indicia of arms-length negotiations present in the case.  *See, e.g.*, *Wilson v. Tesla, Inc.*, No. 17-cv-03763-JSC, 2019 WL 2929988, at *10 (N.D. Cal. July 8, 2019) (stating that other relevant considerations include the benefits to the class members and the extent of discovery and litigation).  As examined further herein, the requested fees appear to be in a reasonable range relative to the recovery of the class and the parties' litigation efforts are not indicative of collusion.  Therefore, the second factor does not prohibit granting preliminary approval.

As for the third factor, Defendants will distribute up to $653,143.19 to Class Members, plus interest.  The amount distributed depends on the number of valid claims received.  In the April 22, 2021 hearing, Norton disputed that the Agreement is reversionary but agreed that Defendants will retain any unclaimed reimbursements.  A claims-made settlement raises the same concerns as a reversionary agreement and so the third *Bluetooth* factor is present here.  *See* 4 Newberg on Class Actions § 13:7 (5th ed.) (explaining that a claims-made settlement is "the functional equivalent of a common fund settlement where the unclaimed funds revert to the defendant").  Further, the Administrator estimates that only between 5-10% of the Class will submit a Claim Form.  [Docket No. 132-5, Declaration of Julie Green ("Green Decl.") ¶ 5.]  At the first hearing, the court raised the concern that a significant portion of the monetary relief will likely remain in Defendants' possession.  In response, the parties negotiated a more robust Notice program, which is described further below.  Considering the Agreement as a whole, including the amount offered in settlement and the expected efficacy of the notice as revised, this claims-made settlement is not indicative of collusion.  Further, the $50,000 in statutory fees will be fully distributed *pro rata* and the funds for any uncashed checks will be distributed to the *cy pres* recipient.  In addition, Defendants will relinquish their claims to court costs in the amount of $169,904.00 regardless of whether any Class Members submit valid claims.

Accordingly, the Agreement "appears to be the product of serious, informed, non-collusive negotiations." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1078, 1079–80 (N.D. Cal. 2007).

1

### 3.     Adequate Relief

2

In considering whether class relief is adequate, a court must consider:

3

> (i) the costs, risks, and delay of trial and appeal;

4

> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

5

> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

6

> (iv) any agreement required to be identified under Rule 23(e)(3) . . .

7

Rule 23(e)(2)(C).

8

### a.     Costs, Risks, and Delay of Trial and Appeal

9

The cost and risk of continued litigation is discussed in Section III.A.1, *supra*.

10

### b.     Relief Distribution

11

Rule 23 requires the court to consider "the effectiveness of any proposed method of

12

distributing relief to the class, including the method of processing class-member claims." Fed. R.

13

Civ. P. 23(e)(2)(C)(ii). "Adequate notice is critical to court approval of a class settlement under

14

Rule 23(e)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998). "[N]otice must be

15

'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of

16

the action and afford them an opportunity to present their objections.'" *Tadepalli v. Uber Techs.,*

17

*Inc.*, No. 15-cv-04348-MEJ, 2016 WL 1622881, at *6 (N.D. Cal. Apr. 25, 2016) (quoting *Mullane*

18

*v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)).

19

### i.     Notice

20

Under the Agreement, Defendants will provide the Administrator with each Class Member's

21

last known contact information.  Agreement § 5.05(1).  The Administrator will check the addresses

22

provided against the National Change of Address registry and may perform a skip trace using the

23

Accurint database to determine the most current mailing address for Class Members.  *Id.* § 5.05(2).

24

The Administrator will send the Notice by first-class U.S. Mail to Class Members within sixty days

25

of the date of preliminary approval.  *Id.* § 5.05(3).  If any Notices are returned with a forwarding

26

address, the Administrator will re-mail the Notice and Claim Form to the Class Member at the

27

forwarding address.  *Id.* § 5.05(2).  If any Notice is returned as undelivered, the Administrator will

28

perform a skip trace and re-mail the Notice to any new or different address identified by the Accurint

United States District Court
Northern District of California

database. *Id.*

At the April 22, 2021 hearing, the court noted that the expected claim rate of 5-10% means that the majority of the settlement funds will remain in Defendants' possession. The parties explained that a Claim Form process is necessary to identify debts that are consumer in nature because other debts would not qualify for any relief. The court's class certification order explicitly listed a claims process as one method of addressing Defendants' arguments regarding predominance. Order on Class Certification at 21. Thus, requiring Class Members to submit a Claim Form is not inherently unreasonable. However, the court noted that the Claim Form was vague in certain aspects that could potentially reduce the claim rate. Namely, the Claim Form did not explain what would happen if a Class Member checked "I don't know" to the question of whether their debt was consumer in nature. The court determined that Class Members might be more motivated to investigate the nature of their debt if they knew that answering "I don't know" would eliminate any potential recovery. The revised Claim Form addresses this issue by explaining that the only way to recover under the Agreement is to answer "Yes." The court also previously observed that the claims process did not tell Class Members what their expected recovery would be if they returned the Claim Form. Class Members who knew they could receive a larger amount might be more motivated to return a Claim Form.[4] The parties integrated this suggestion into the revised version of the Agreement, such that the Class Notice now informs Class Members how much money is at issue. *See* Agreement, Ex. A. Finally, Class Members will now have 75 days to respond to the Class Notice instead of the initial 45 days. These changes to the claims process alleviate much of the court's concern over the expected low claim rate. Further, the proposed Notice is straightforward and written in accessible language. *See* Agreement, Ex. A. It adequately informs potential Class Members of the nature of the action as well as their choices in responding to the Notice. It clearly indicates that Class Members must submit a Claim Form to receive any cash

---

[4] The court ordered Defendants to file an anonymized spreadsheet that lists the amounts they collected from each of the 481 class members, arranged from the lowest to highest amounts. The filing indicates that the amounts collected range from $0 to over $18,000. *See* Docket No. 122-1. At least 7 Class Members have a potential recovery of over $10,000 while dozens more might qualify for relief over $1,000. Thus, listing the exact amounts at issue on the Claim Form could result in a higher claim rate by Class Members with the largest potential recoveries.

United States District Court
Northern District of California

award.  It also provides the Administrator's contact information and the address of the settlement website if potential Class Members want to obtain more information.

In light of the above considerations, the court finds that the proposed notice is adequate and reasonably calculated to apprise Class Members of their rights under the Agreement.

### ii.    Claims Process

Another consideration is whether the claims process is burdensome to the class members. In this case, Class Members must submit a Claim Form in order to receive any cash award. However, the Claim Form is a simple one-page form that asks each potential Class Member to answer a single question—namely, whether the debt at issue is a "consumer debt." *See* Agreement, Ex. B.  Class Members can mail the form to the Administrator, email an image of the form to the Administrator, or fill out and submit the Claim Form on the settlement website.

The court finds that the claims process is not burdensome.

### c.    Attorneys' Fees

"District courts must be skeptical of some settlement agreements put before them because they are presented with a bargain proffered for approval without benefit of an adversarial investigation." *Hanlon*, 150 F.3d at 1021 (internal quotations and citations omitted).  "These concerns warrant special attention when the record suggests that settlement is driven by fees; that is, when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded." *Id.*  The Ninth Circuit has approved two different methods of calculating a reasonable attorneys' fees award. *See Bluetooth*, 654 F.3d at 941-42.  If the settlement agreement provides for a common fund, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *Id.* at 942.  For claims-made settlements, like the one in this case, the lodestar method is appropriate.[5] *In re Apple Inc. Device Performance Litig.*, 2021 WL 1022866, at *1 (N.D. Cal. Mar. 17, 2021).  The court will not award

---

[5] The settlement is not a pure claims-made settlement because some relief, such as the statutory fee award and the forgiveness of court costs, is not distributed on a claims-made basis.  However, since most of the monetary relief is based on the number of claims submitted, the court finds that the lodestar method is the most appropriate method of calculating a reasonable attorneys' fees award.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    fees at the preliminary approval stage, so this order sets forth enough facts to evaluate whether the

2    fee is reasonable on its face when compared to the settlement benefits.

3         In this case, class counsel will request, and Defendants will not oppose, attorneys' fees and

4    expenses of up to $241,426.58.   Agreement § 7.01.   Class counsel's lodestar is approximately

5    $289,347.50.  *See* Kennedy Decl. ¶ 9; Docket No. 132-2, Declaration of Gina Di Giusto ("Di Giusto

6    Decl.") ¶ 3.  This includes attorneys' rates ranging from $400 to $600 per hour and represents 513.6

7    hours of work by four attorneys.  Thus, the requested fee award is lower than the lodestar.  Given

8    that contingency cases may warrant a positive multiplier, the negative multiplier weighs in favor of

9    reasonableness.  *See Ketchum v. Moses*, 24 Cal. 4th 1122, 1138 (2001) (upholding the lodestar

10   enhancement predicated on contingency risk).  The requested rates also appear to be within a

11   reasonable range given Class counsel's experience.  *See* Docket No. 78 ¶¶ 3-6 (Natalie Lyons);

12   Docket No. 79 ¶¶ 3-5 (William Kennedy).  While Norton's attorneys billed a large number of hours,

13   this case has involved extensive litigation, including two motions to dismiss, LVNV's motion to

14   amend its answer, the class certification motion, Norton's deposition, and two mediation sessions.

15   Therefore, the hours billed are not clearly unreasonable.

16        The court need not resolve the specific amount of attorneys' fees and costs at this stage,

17   since such matters will be finally determined at the fairness hearing.  For the purposes of preliminary

18   approval, the court finds the settlement agreement with respect to fees and costs is within the

19   reasonable range of approval.

20                    **4.      Equitable Treatment of Class Members**

21        Courts have approved settlement plans that pay monetary benefits based on the comparative

22   strengths and weaknesses of certain claims.  *See, e.g.*, *In re MyFord Touch Consumer Litig.*, No.

23   13-cv-03072-EMC (N.D. Cal. Mar. 28, 2019), ECF No. 526 at 4-5.

24        In this case, each Class Member who submits a valid Claim Form will receive a full

25   reimbursement of all amounts Defendants collected from them.  All Subclass Members are equally

26   entitled to a *pro rata* share of the $50,000 statutory fees.  This relief is appropriately tailored to the

27   damage suffered by each Class Member.

28

United States District Court
Northern District of California

### C.     Northern District Guidelines

The Northern District of California has issued procedural guidance for the settlement of class actions ("Guidelines").  The court will consider them, although they do not carry the weight of law.

#### 1.     Identity of Settlement Class

The Guidelines require the parties to state "any differences between the settlement class and the class proposed in the operative complaint and an explanation as to why the differences are appropriate in the instant case."  Guideline § 1(a).

Here, the court certified a class that is identical to the settlement class.  *See* Order on Class Certification at 4.  This factor weighs in favor of preliminary approval.

#### 2.     Release of Claims

The Guidelines require the court to look at "any differences between the claims to be released and the claims certified for class treatment and an explanation as to why the differences are appropriate in the instant case."  Guideline § 1(d).  The release provision in the Agreement provides:

> As of the date of Final Approval, and in consideration of the mutual promises contained herein, the Class Representative and Releasing Persons who do not timely and properly exclude themselves from this Settlement, in accordance with the terms of this Agreement, will be deemed to have fully, conclusively, irrevocably, forever, and finally released, relinquished, and discharged Defendants, their successors, predecessors, assigns, parent corporations, subsidiaries, affiliated companies, and all of their respective present and former employees, officers, directors, agents, attorneys, members, stockholders, divisions, subrogees, 24 insurers, and partners (the "Released Parties"), from all claims, causes of action, suits, obligations, debts, demands, agreements, promises, liabilities, damages, losses, controversies, costs, expenses and attorneys' fees of any nature whatsoever that were alleged or that could have been alleged in this Action that were raised or that could have been raised based upon the facts set forth in the Action, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, punitive or compensatory, and whether arising under state law, federal statute, ordinance, regulation, common law or equity, or other source of law, whether or not such claims are in the nature of damages, penalties, attorneys' fees, declaratory, or injunctive relief, whether in contract, tort, or pursuant to a statutory remedy, including, without limitation, any claims for attorneys' fees and costs.

Agreement § 8.01.  The Agreement also includes a waiver of the rights protected by California Civil Code § 1542, which prohibits a general release of claims as to claims that the releasing party "does

22

not know or suspect to exist in his or her favor at the time of executing the release and that, if known

by him or her, would have materially affected his or her settlement with the debtor or released party."

*Id.* § 8.02.  The release relates only to the allegations in this case and the factual basis for those

claims, and is thus sufficiently tailored to the allegations in the TAC.

### 3.    Class Recovery

The Guidelines require parties to explain "[t]he anticipated class recovery under the

settlement, the potential class recovery if plaintiffs had fully prevailed on each of their claims, and

an explanation of the factors bearing on the amount of the compromise."  Guideline § 1(e).

The class recovery is examined in Section III.A.2, *supra.*

### 4.    Allocation Plan

The parties should explain "the proposed allocation plan for the settlement fund."  Guideline

§ 1(f).  The allocation plan is detailed in Sections III.A.2 and III.B.3, *supra.*

### 5.    Submission of Claim Forms

If there is a Claim Form, the parties should provide "an estimate of the number and/or

percentage of class members who are expected to submit a claim in light of the experience of the

selected claims administrator and/or counsel from other recent settlements of similar cases, the

identity of the examples used for the estimate, and the reason for the selection of those examples."

Guideline § 1(g).

This factor is considered in Sections III.A.2 and III.B.3, *supra.*

### 6.    Reversions

"[I]n light of Ninth Circuit case law disfavoring reversions," the parties should state

"whether and under what circumstances money originally designated for class recovery will revert

to any defendant, the potential amount or range of amounts of any such reversion, and an explanation

as to why a reversion is appropriate in the instant case."  Guideline § 1(h).

As discussed in Section III.B.2, *supra,* the claims-made settlement in this case allows

Defendants to retain any unclaimed reimbursements.  While this factor weighs against granting

preliminary approval, the class benefits and notice procedures alleviate the concerns implicated by

reversions.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 7.  Settlement Administration

"In the motion for preliminary approval, the parties should identify the proposed settlement administrator, the settlement administrator selection process, how many settlement administrators submitted proposals, what methods of notice and claims payment were proposed, and the lead class counsel's firms' history of engagements with the settlement administrator over the last two years. The parties should also address the anticipated administrative costs, the reasonableness of those costs in relation to the value of the settlement, and who will pay the costs."  Guideline § 2.

Here, the parties propose that the court appoint CPT Group, Inc. to serve as the Administrator.  CPT Group, Inc.'s proposal estimates that the costs of administration in this case are $15,500.00.  Kennedy Decl. ¶ 8.  Attorney Kennedy represents that he did not seek out proposals from other administrators.  *Id.*  However, he has engaged CPT Group, Inc. as an administrator in a previous class action consumer case.  *Id.*  Further, Defendants will cover the full cost of settlement administration.  *Id.*  The administration costs will therefore have no effect on the class recovery.

The court finds the appointment of CPT Group, Inc. is appropriate in this case.

### 8.  Notice

"The parties should ensure that the class notice is easily understandable, taking into account any special concerns about the education level or language needs of the class members."  Guideline § 3.  The Guidelines list certain information that should appear in the notice, such as (1) contact information for class counsel; (2) website address for the settlement site; and (3) information on how to access the case docket on PACER.  In addition, "[t]he notice distribution plan should rely on U.S. mail, email, and/or social media as appropriate to achieve the best notice that is practicable under the circumstances, consistent with Federal Rule of Civil Procedure 23(c)(2)."  Guideline § 3. The notice process is outlined in further detail above.

The proposed Notice in this case contains all the information required by Guideline § 3. Additionally, based on its review of the class notices and the notice distribution plan, examined in more detail in Section III.B.3, *supra*, the court finds that the class notice in this case is accessible and appropriate.

United States District Court
Northern District of California

#### 9.     Opt-Outs

"The notice should instruct class members who wish to opt out of the settlement to send a letter, setting forth their name and information needed to be properly identified and to opt out of the settlement, to the settlement administrator and/or the person or entity designated to receive opt outs. It should require only the information needed to opt out of the settlement and no extraneous information. The notice should clearly advise class members of the deadline, methods to opt out, and the consequences of opting out." Guideline § 4.

The proposed Notice contains instructions for opting out of the settlement in compliance with Guideline § 4.  Further, Class Members wishing to opt out of the settlement are only required to state that they want to be excluded from the settlement, provide their identifying information, and include the name of the case.

The court finds that the opt-out instructions and procedures conform with Guideline § 4.

#### 10.     Objections

"The notice should instruct class members who wish to object to the settlement to send their written objections only to the court. All objections will be scanned into the electronic case docket and the parties will receive electronic notices of filings. The notice should make clear that the court can only approve or deny the settlement and cannot change the terms of the settlement. The notice should clearly advise class members of the deadline for submission of any objections."  Guideline § 5.

The Notice contains all of the elements listed by Guideline § 5 and explains the objection process in plain, clear language.  Thus, the objection procedure is adequate and reasonable.

#### 11.     Attorneys' Fees

The requested fee award is examined in Section III.B.3, *supra*.

#### 12.     Incentive Awards

After the class is notified and has the opportunity to object, Norton intends to request an incentive award of $7,000.  Agreement § 6.01.  Defendants agree to not oppose the application as long as it does not exceed $2,000 but reserve their right to oppose any application for a greater amount.  *Id.*  The presumptive incentive award in the Northern District of California is $5,000.  *See*

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 17-md-02777-EMC, 2019 WL 536661, at *9 (N.D. Cal. Feb. 11, 2019). Norton asserts that the proposed incentive award is reasonable in this case because she "provided valuable service to the class, including preparing for deposition, appearing for deposition, [and] attendance at two mediations (one by zoom)." Mot. at 6.

Although the requested incentive award exceeds the presumptively reasonable amount, the court finds that this factor does not weigh against preliminary approval. The court will make a final determination on the incentive award at a later date.

### 13.   CAFA Notice

"The parties should address whether CAFA notice is required and, if so, when it will be given." Guidelines § 10.

In the July 8, 2021 hearing, the parties confirmed that the Administrator provided CAFA notice on June 7, 2021.

### 14.   Past Distributions

The Guidelines provide that "[l]ead class counsel should provide the following information for at least one of their past comparable class settlements (i.e. settlements involving the same or similar clients, claims, and/or issues)":

> a.  The total settlement fund, the total number of class members, the total number of class members to whom notice was sent, the method(s) of notice, the number and percentage of Claim Forms submitted, the average recovery per class member or claimant, the amounts distributed to each cy pres recipient, the administrative costs, and the attorneys' fees and costs.
>
> b.  In addition to the above information, where class members are entitled to non-monetary relief, such as discount coupons or debit cards or similar instruments, the number of class members availing themselves of such relief and the aggregate value redeemed by the class members and/or by any assignees or transferees of the class members' interests. Where injunctive and/or other non-monetary relief has been obtained, discuss the benefit conferred on the class.

Guidelines § 11. "Counsel should summarize this information in easy-to-read charts that allow for quick comparisons with other cases." *Id.*

Attorney Kennedy provided information about two comparable class action settlements for

which he served as lead counsel.  Kennedy Decl. ¶¶ 11-12.  The first case, *Soto v. Chase Finance LLC*, Napa County Superior Court Case No. 26-50251, also involved fair debt collection practices.  *Id.* ¶ 11.  There were 77 class members, each of whom received a $1,000 civil penalty on a non-reversionary basis for a total settlement fund of $77,000.  *Id.*  No Claim Form was required.  *Id.*  The defendants in the case paid the full costs of administration and two *cy pres* recipients received $16,125 each.  *Id.*  The court awarded $140,000 in attorneys' fees and costs, the full amount requested by the plaintiffs, after a contested motion.  *Id.*

In the second case, *Barnes v. American Residential Services, L.L.C. et al.*, Santa Clara County Superior Court, Case No. 1-10-CV-183947, the plaintiffs challenged a plumbing company's consumer practices.  Kennedy Decl. ¶ 12.  There were 200,160 class members and several subclasses.  *Id.*  The total monetary relief to the class was $7,500,000 paid on a non-reversionary basis, amounting to $37.47 per class member.  *Id.*  No Claim Form was required to receive this relief.  *Id.*  The settlement agreement also provided that the 1,350 members of a subclass who purchased a particular kind of water heater were given the right to rescind their purchase, which provided a total value of $4,630,500 ($1,142,600.10 of which was actually distributed to class members who opted to rescind their purchases).  *Id.*  The plaintiffs in that case also obtained significant injunctive relief.  *Id.*  The costs of administration were covered by the defendant separate from class relief and were capped at $350,000.  *Id.*  The *cy pres* recipient received $2,419,761.63, and the defendant paid attorneys' fees and costs in the amount of $1,875,000.  *Id.*

The current case is distinguishable from the two comparator cases submitted by Class counsel in that Class Members are required to submit a Claim Form to receive any monetary benefits under the Agreement.  However, a significant issue in this case is whether each Class Member incurred a "consumer debt" within the meaning of the FDCPA and the Rosenthal Act.  In granting class certification, the court noted that this inquiry was not too particularized for class treatment since there are other methods (including a claims process like the one proposed here) to identify qualifying Class Members.  *See* Order on Class Certification at 19-22.  For the reasons explained in that order and above, the claims process proposed by the parties is fair and reasonable.

Upon a thorough evaluation of all the factors laid out above, the court finds that preliminary

approval is warranted in this case.

**IV.    CONCLUSION**

For the reasons stated above, the motion for preliminary approval is granted.  It is ordered that:

1.    The Agreement is preliminarily approved as fair, adequate, and reasonable pursuant to Rule 23(e).

2.    Plaintiff Sonya Norton was previously appointed to serve as Class Representative for the Class.

3.    Counsel at the Consumer Law Office of William E. Kennedy and Housing Economic Rights Advocates was previously appointed to serve as Class Counsel.

4.    CPT Group, Inc. is appointed as the Claim Administrator.

5.    The proposed Claim Forms and forms of notice are approved as to form and content.  The parties shall have discretion to jointly make non-material minor revisions to the Claim Forms or the class notices. Responsibility regarding settlement administration, including, but not limited to, notice and related procedures, shall be performed by the Claim Administrator, subject to the oversight of the parties and this court as described in the Agreement.  All Class Members who wish to submit a claim must do so in the manner specified in the Agreement by **75 days after the date of the mailing of the Notice**.

6.    The procedures for Class Members to exclude themselves from or object to the Agreement are approved.  Any request for exclusion by a Class Member must be postmarked or submitted electronically on the settlement website by **the Notice Response deadline**, and in compliance with the terms of the Agreement.  Any objection by a Class Member must be filed with the court by the same date, and in compliance with the terms of the Agreement.  **Note:** Currently, the Class Notice states that objections are due 14 days before the final approval hearing.  The parties shall update the Class Notice to provide that the deadline to file objections is the same as the Notice Response Deadline.

7.    Class Counsel shall file a list of Class Members who have requested exclusion from the Settlement in a valid and timely manner by **7 days after the Notice Response deadline**.

8.      The parties shall file any memoranda or other materials in support of final approval of the Agreement, including in response to any timely and valid objection to the Agreement, no later than **21 days after the Notice Response deadline**.  Such materials shall be served on Class counsel, Defendants' counsel, and on any member of the Class (or their counsel, if represented by counsel) to whose objection to the Agreement the memoranda or other materials respond.

9.      Norton's claims against Defendants are hereby stayed.

10.     Pending final determination of whether the Settlement should be approved, Norton and each Class Member, and any person purportedly acting on behalf of any Class Member(s), are hereby enjoined from commencing, pursuing, maintaining, enforcing, or proceeding, either directly or indirectly, any Released Claims in any judicial, administrative, arbitral, or other forum, against any of the Released Parties, provided that this injunction shall not apply to the claims of Class members who have timely and validly requested to be excluded from the Class. This injunction will remain in force until the Effective Date or until such time as the parties notify the court that the Agreement has been terminated.

11.     In the event that the proposed Agreement is not finally approved by the court, or in the event that the Agreement becomes null and void or terminates pursuant to its terms, this order and all orders entered in connection herewith shall become null and void, shall be of no further force and effect, and shall not be used or referred to for any purposes whatsoever in this litigation or in any other case or controversy, in such event the Agreement and all negotiations and proceedings directly related thereto shall be deemed to be without prejudice to the rights of any and all of the parties, who shall be restored to their respective positions as of the date and time immediately preceding the execution of the Agreement

12.     Counsel for the parties are hereby authorized to utilize all reasonable procedures in connection with the administration of the Agreement which are not materially inconsistent with either this order or the terms of the Agreement.

United States District Court
Northern District of California

The following deadlines shall apply:

| Deadline for Defendants to provide Class list to Administrator | **15 days after Preliminary Approval entered** |
|---|---|
| Deadline for Administrator to mail Notice to Class Members | **60 days after Preliminary Approval entered** |
| Deadline for Class Members to submit objections/requests for exclusion | **75 days after Notice mailing date** |
| Deadline for Class Members to submit Claim Forms | **75 days after Notice mailing date** |
| Deadline for Class counsel to file a list of exclusions | **7 days after Notice Response deadline** |
| Deadline for Class counsel to file motion for final approval | **Within 21 days after Notice Response deadline** |
| Final approval hearing | **January 13, 2022 at 1:00 p.m.** |

The final approval hearing will take place via Zoom videoconference. In the Class Notice and any other settlement documents reflecting the time and date of the final approval hearing, the parties shall list the following hearing information:

**Webinar Access**: All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/dmr.

**General Order 58**: Persons granted access to court proceedings held by telephone or videoconference are reminded that photographing, recording, and rebroadcasting of court proceedings, including screenshots or other visual copying of a hearing, is absolutely prohibited.

**Zoom Guidance and Setup**: https://www.cand.uscourts.gov/zoom/.


**IT IS SO ORDERED.**

Dated: July 23, 2021



_____
Donna M. Ryu
United States Magistrate Judge