UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONYA NORTON,<br><br>    Plaintiff,<br><br>v.<br><br>LVNV FUNDING, LLC, et al.,<br><br>    Defendants. | Case No. 18-cv-05051-DMR<br><br>**ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AWARDING ATTORNEYS' FEES AND COSTS**<br><br>Re: Dkt. Nos. 138, 143 |

Plaintiff Sonya Norton filed this putative class action against Defendants LVNV Funding, LLC ("LVNV") and Law Office of Harris & Zide ("H&Z") (collectively, "Defendants") alleging violations of the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and California's Fair Debt Collection Practices Act ("Rosenthal Act"), Cal. Civ. Code § 1788 *et seq*. Norton also seeks injunctive relief under California's Unfair Competition Law ("UCL"), Cal. Bus. & Profs. Code § 17200 *et seq*. On July 23, 2021, the court granted preliminary approval of a class action settlement ("Prelim. Approval Order"). [Docket No. 137.] Plaintiff now seeks final approval of the settlement ("Approval Mot."). [Docket No. 143.] Plaintiff also moves for an award of attorneys' fees and costs ("Fees Mot."). [Docket No. 138.] Defendants do not oppose the motion for attorneys' fees but filed a limited opposition to the final approval motion ("Opp'n"), to which Norton replied ("Reply"). [Docket Nos. 145, 146.] The court held a hearing on January 13, 2022. For the reasons stated below, both motions are granted.

**I.   BACKGROUND**[1]

On October 21, 2008, non-party Arrow Financial Services, LLC ("Arrow") filed a

---

[1] A more complete procedural history of this matter may be found in the court's preliminary approval order. Prelim. Approval Order at 3-4.

1  collections action against Norton in San Mateo County Superior Court, alleging that Norton failed
2  to tender owed amounts to Arrow.  *See* Third Amended Complaint ("TAC") ¶ 14.  [Docket No.
3  48.]  On December 26, 2008, the state court entered a default judgment against Norton in the
4  amount of $3,986.60.  *Id.* ¶ 15.  On February 24, 2012, H&Z filed a substitution of counsel to
5  appear on behalf of Arrow in the state court action.  *Id.* ¶ 16; *Id.*, Ex. 2.  On May 17, 2012, H&Z
6  caused a writ of execution to issue from a state court in the amount of $5,853.07.  *Id.* ¶ 17.
7  Norton's wages were garnished in the amount of $323.55 in August and September 2012.  *Id.*
8  Defendants sought and obtained five more writs of execution between December 27, 2013 and
9  September 1, 2017.  *Id.* ¶¶ 17-25.  On November 29, 2017, Norton filed a claim of exemption in
10 response to the garnishment of her wages.  *Id.* at ¶ 30.  Through December 2017, Defendants
11 allegedly garnished over $1,000 from Norton's paycheck.  *Id.* ¶¶ 31-32.  On December 15, 2017,
12 an attorney at Housing and Economic Rights Advocates ("HERA") wrote a letter to H&Z on
13 Norton's behalf stating that the wage garnishment appeared to be improper because, unknown to
14 Norton, Arrow had filed a Certificate of Cancellation with the California Secretary of State in
15 October 10, 2012.  *Id.* ¶ 37. No other party had established itself as Arrow's assignee of record.
16 *Id*.  H&Z subsequently filed a notice terminating the garnishment of Norton's wages.  *Id.*  Norton
17 was "reimbursed some, but not all" of her garnished wages.  *Id.* ¶ 39.

18      On February 13, 2018, an H&Z attorney informed Norton's attorney at HERA that H&Z
19 represented LVNV rather than Arrow.  *Id.* ¶ 36.  According to Norton, LVNV had acquired the
20 judgment against her from Arrow in 2012 but did not disclose this fact to the state court or to
21 Norton until 2018.  *Id.* ¶¶ 41-43.  On May 11, 2018, Norton filed a motion in the state court action
22 to quash the prior writs of execution.  *Id.* ¶ 40.  On June 29, 2018, the court granted the unopposed
23 motion on the grounds that "no acknowledgment of assignment of judgment has been filed as
24 required by Code of Civil Procedure § 673."  *Id.*  On September 7, 2018, H&Z filed an
25 Acknowledgment of Assignment of Judgment in the state court action pursuant to California Code
26 of Civil Procedure § 673; it acknowledges the assignment of the judgment against Norton from
27 Arrow to LVNV.  [Docket No. 37-1, Ex. B.]
28      In this lawsuit, Norton contends that Defendants were prohibited from taking judicial

United States District Court
Northern District of California

action to enforce the judgment without first complying with section 673. She asserts individual and class claims under the FDCPA, the Rosenthal Act, and the UCL.

On October 6, 2020, the court certified a class encompassing all California residents who meet the following conditions defined as follows:

    a.    LVNV Funding, LLC, represented by Law Office of Harris & Zide, took judicial action (including obtaining Writs of Execution, wage garnishment, and bank levy) after August 17, 2014 (four years prior to the filing of this action) to collect a judgment based on a consumer debt obtained in a California court;

    b.    Arrow Financial Services, LLC was the plaintiff of record at the time the judgment was entered; and

    c.    LVNV Funding, LLC did not file an Assignment of Judgment in conformity with California Code of Civil Procedure § 673 or otherwise become the assignee of record.

*See* Order on Motion for Class Certification at 4 [Docket No. 103]. The certified class encompassed a four-year class period corresponding to the statute of limitations for UCL claims. The court also certified a subclass defined identically as the class but with a class period limited to August 17, 2017 to the present, corresponding to the statute of limitations for FDCPA and Rosenthal Act claims.

Thereafter, the parties engaged in mediation and reached a settlement to resolve all of Norton's claims. Norton filed a first motion for preliminary approval of the settlement on March 11, 2021. [Docket No. 118.] During the hearing, the court raised several concerns about the settlement. The parties agreed to withdraw the motion and renegotiate certain terms. They filed a new motion for preliminary approval on May 28, 2021. [Docket No. 132.] The court held a second hearing and granted the motion on July 23, 2021.

The settlement agreement ("Agreement") provides for (1) reimbursement, with interest, of all amounts Defendants collected from class members; (2) a total of $50,000 to be distributed to subclass members equally; (3) withdrawal of all claims court costs and interest on court costs for open counts, and (4) complete cessation of collective activity on closed activity. Agreement

§§ 4.04-4.03.[2] The specific terms of the Agreement and the court's preliminary evaluation of those terms are set forth in detail in the court's preliminary approval order and are not repeated here. Prelim. Approval Order at 4-8.

## II. CAFA NOTICE

The Class Action Fairness Act ("CAFA") requires that each defendant serve a notice containing certain required information upon the appropriate state and federal officials within ten days of the filing of a proposed settlement. 28 U.S.C. § 1715(b). CAFA also prohibits a court from granting final approval until ninety days have elapsed since notice was served under that provision. *Id.* § 1715(d). This case is subject to CAFA's requirements.

The Claims Administrator for this case, CPT Group, Inc., ("CPT") confirmed that it provided CAFA notice on June 7, 2021. Declaration of Katie Tran ("Tran Decl.") ¶ 4 [Docket No. 143-2.] The parties also represented at the second preliminary approval hearing that CAFA Notice was complete. *See* Prelim. Approval Order at 26. Accordingly, the CAFA notice requirement has been satisfied.

## III. MOTION FOR FINAL APPROVAL

"The Ninth Circuit maintains a 'strong judicial policy' that favors the settlement of class actions." *McKnight v. Uber Techs., Inc.*, No. 14-cv-05615-JST, 2017 WL 3427985, at *2 (N.D. Cal. Aug. 7, 2017) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). The settlement of a certified class action must be "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "The court's role in reviewing a proposed settlement is to represent those class members who were not parties to the settlement negotiations and agreement." *Tadepalli v. Uber Techs., Inc.*, No. 15-cv-04348-MEJ, 2016 WL 1622881, at *6 (N.D. Cal. Apr. 25, 2016). The court maintains an independent duty to examine the fairness of the settlement under Rule 23(e) and the factors articulated in *Churchill Village, L.L.C. v. General. Electric*, 361 F.3d 566,

---

[2] The Agreement is attached as Exhibit 1 to the Declaration of William E. Kennedy in support of Norton's motion for final approval ("Kennedy Decl."). [Docket No. 143-1.] At the hearing, class counsel indicated that given the number of valid claims processed, each sub-class member will likely receive about $2,000 each.

4

575 (9th Cir. 2004). *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).

In granting the motion for preliminary approval, the court thoroughly examined the fairness of the settlement under the Rule 23(e)(2) factors, the *Churchill Village* factors, and the Northern District of California's Procedural Guidance for Class Action Settlements ("Procedural Guidance").[3] Prelim. Approval Order at 8-27. The court need not revisit its prior findings and addresses only the matters that could not be resolved at preliminary approval: (1) whether notice to the class was effective; (2) whether the class member response was favorable; (3) whether the requested attorneys' fees and costs are reasonable; and (4) whether Norton is entitled to a service payment, also known as an incentive award.[4] The court also addresses the suitability of the parties' intended *cy pres* recipient.

**A. Adequacy of Notice**

Rule 23 requires the court to consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998). "[N]otice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Tadepalli*, 2016 WL 1622881, at *6 (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)).

The court previously found that the Agreement's provisions for class notice were adequate and reasonably calculated to apprise class members of their rights under the settlement. Prelim. Appr. Order at 18-20; *see* Agreement § 5.05, Ex. A. The court also found that the claims process was not burdensome. Prelim. Appr. Order at 20; *see* Agreement, Ex. B.

The Procedural Guidance requires class counsel to provide the numbers of undeliverable

---

[3] Available at https://www.cand.uscourts.gov/ClassActionSettlementGuidance.

[4] *See also* Procedural Guidance, "Final Approval" (establishing guidelines on class members' response, attorneys' fees, and incentive awards).

1  class notices and class members who submitted valid claims. According to CPT's declaration, the
2  class notice was sent via U.S. Mail to 453 class members on September 21, 2021. Tran Decl. ¶ 6.
3  Of those, the post office forwarded five notices to new addresses and returned thirty notices to
4  CPT as undeliverable and without a forwarding address. *Id.* ¶ 7. CPT then located new addresses
5  for twelve individuals and re-mailed the notices to them. *Id.* Ultimately, eighteen class notices
6  remain undeliverable. CPT established a settlement website as well as a twenty-four-hour toll-free
7  hotline and email address to communicate with class members. *Id.* ¶¶ 5, 8-9.

CPT reports that it received fifty-six total responses to the notice, of which twelve were duplicates and thus deemed invalid. Tran Decl. ¶ 11-12. CPT determined that forty-four class members—of which twenty-five were sub-class members—submitted valid claims. *Id.* ¶ 14. (The court addresses a dispute over two claims in the next sections). CPT collected $140,575.51 from the class members with valid claims. *Id.* Of the 453 notices mailed, only eighteen were ultimately not delivered, meaning that 96 percent of notices were successfully mailed. Only forty-four notices mailed resulted in actual claims, which the court independently calculates as a claims rate of about ten percent. This rate falls at the high end of the expected claim rate of five to ten percent that the parties previously represented to the court. *See* Prelim. Approval Order at 19. Therefore, the court finds that the notice distribution plan was the "best notice that is practicable under the circumstances," consistent with Rule 23(c)(2).

### 1. Rosa Castaneda's Claim

The parties contest the validity of two class member's claims.[5] CPT received a claim request from an individual named Rosa Vazquez, who enclosed a name change petition with her claim form. Tran Decl. ¶ 13; Supplemental Declaration of Katie Tran ("Tran Suppl. Decl.") ¶ 3

---

[5] The Agreement provides that "[i]n the event that Class Counsel or Defendants' Counsel disagree with the decision of the Class Administrator to accept or reject a Claim Form, Counsel shall meet and confer in good faith to attempt to reach a resolution. In the event that Counsel reach an agreement as to how to treat the disputed Claim Form, the Class Administrator must comply with that agreement, as long as it is consistent with terms of this Agreement. In the event that Counsel cannot reach an agreement as to how to treat the disputed Claim Form, they will jointly raise the issue with the Court in the motion for Final Approval of the Settlement." Agreement § 5.08.

6

[Docket No. 146-1.][6] Defendants' affidavit includes this individual's initial claim form signed by Rosa Castaneda. Declaration of R. Travis Campbell ("Campbell Decl.") Ex. A [Docket No. 145-1.] The enclosed petition—which the Central District of California granted on March 1, 2011—reflected a request by an individual named Rosa Maria Castaneda Robles to legally change her name to Rosa Maria Castaneda as part of her naturalization process. *Id.* On December 10, 2021, CPT emailed a spreadsheet to class and defense counsel containing responses it received from class members, including one by a claimant named Rosa Vazquez or Rosa Castaneda. Campbell Decl. ¶ 2; Supplemental Declaration of William Kennedy ("Kennedy Suppl. Decl. ¶¶ 2-3) [Docket No. 146-2.] The spreadsheet marked Castaneda's claim form as deficient. Kennedy Suppl. Decl. ¶ 3. Class counsel William Kennedy acknowledged receipt of the spreadsheet, informed CPT that he would challenge that determination, and requested further information about it. Campbell Decl. Ex. B. The class administrator replied on December 13, 2021 that "Rosa Vazquez's claim form is deficient since we were unable to locate her name in the provided name change document. The name on the provided document shows Rosa Maria Castaneda Robles." Campbell Decl. Ex. B.; *see* Kennedy Suppl. Decl. ¶ 4. Kennedy attests that "[t]he email did not mention that CPT was, or would be in communication with Ms. Castaneda to obtain additional information." Kennedy Suppl. Decl. ¶ 4.

Kennedy then wrote Castaneda a letter informing her that her claim form was deemed invalid out of concern that she might "lose out on her opportunity to obtain financial benefits from the class settlement." Kennedy Suppl. Decl. ¶ 5. He said he "believe[d] it was his duty as class counsel to assist class members . . . and did not realize that CPT would be working with Ms. Castaneda to obtain the additional information." *Id.*

On December 21, 2021, class counsel replied that he "made contact with [Castaneda] and ha[s] worked with her to prepare the attached declaration." *Id.* Ex. C. His email enclosed a sworn declaration from Castaneda in which she stated that her given name at birth was Rosa Maria

---

[6] The Tran Declaration and Supplemental Tran Declaration refer to this class member as Rosa Vazquez. In light of how the class member identifies herself in her declaration, the court refers to her as Rosa Castaneda.

7

1   Castaneda Robles, but that she "generally used the name Rosa Vazquez" after she married and
2   adopted her husband's last name. *Id.* Ex. D. ¶¶ 2-3. After she naturalized, she decided to change
3   her name to "Rosa Maria Castaneda." *Id.* ¶ 4. She received a claim form addressed to "Rosa
4   Vazquez," although the wages garnished from her employer were under "Rosa Castaneda." *Id.*
5   ¶ 6. Castaneda provided her marriage certificate, wage garnishment order, a pay stub, a letter
6   from San Bernardino County, and her driver's license that alternate between using the names Rosa
7   Vazquez and Rosa Castaneda. *Id.* ¶¶ 8-10. After receiving this email and declaration, CPT
8   determined that Castaneda presented a valid claim and updated her claim form to reflect her name
9   as Rosa Maria Castaneda Robles. Campbell Decl. ¶ 6; Tran Decl. ¶ 13.

10   According to the class administrator, CPT mailed a letter to Castaneda on December 21,
11   2021 requesting additional documentation about her name change. Tran Suppl. Decl. ¶ 4.
12   Castaneda replied by phone and email to CPT on December 29. *Id.* ¶¶ 4-5. CPT communicated
13   with her and reviewed her supporting documentation, and thereafter determined her information
14   was sufficient, approved her name change, and updated her claim form as "Rosa Maria Castaneda
15   Robles." *Id.* ¶ 7.

16   Nevertheless, Defendants challenged Castaneda's claim because of Kennedy's
17   communications with her. Opp'n at 2. The Agreement prohibits counsel from "attempting to
18   affirmatively contact Class Members to discuss the litigation, the Settlement or the contents of or
19   response to the Claim Form. Class Counsel may, however, respond to any questions from
20   potential Class Members if the potential Class Members contact Class Counsel first." Agreement
21   § 5.09. Kennedy's own email to CPT and Defendants' counsel plainly states that he contacted
22   Castaneda after CPT's attempts. Campbell Decl. Ex. C. However, Kennedy admits that he "did
23   not think about the prohibition in the Settlement Agreement on direct communications with class
24   members when [he] sent the letter to Ms. Castaneda." Kennedy Suppl. Decl. ¶ 5. He avers that he
25   "believe[d] the provision was negotiated by Defendants to prohibit Class Counsel from advising
26   Class Members as to the definition of 'consumer debt' during the claim process, and did not think

of the applicability of the provision outside of that context." *Id.*[7]

Based on Castaneda's documentation and the class administrator's sworn affidavits, the court is satisfied that Rosa Vazquez and Rosa Castaneda is the same person. Therefore the court overrules Defendants' objection and permits her claim. As the court stated at the fairness hearing, while the plain language of the Agreement bars communications initiated by class counsel to class members, the appropriate remedy for this violation is not invalidating an otherwise valid claim. CPT communicated with Castaneda apart from Kennedy. CPT's own independent investigation of Castaneda's name and claim, as attested by the claim administrator, resulted in its determination that she had a valid claim—not any steps taken by Kennedy. Because there is no evidence that Castaneda's claim is invalid, the court will not penalize her for actions performed by class counsel.

The court finds that Kennedy did violate the terms of the settlement, even if not purposefully or willfully, and admonishes him for initiating an improper communication with a class member.

### 2. Rosa Della Porta's Claim

Norton also challenges CPT's ruling invalidating a late claim by Rosa Della Porta as untimely.[8] Della Porta claims $232.86 from the settlement and an equal share of $50,000 as a sub-class member. [Docket No. 148-2.] Della Porta represents that she signed and mailed her claim

---

[7] Kennedy also objected that the parties failed to sufficiently meet and confer about Castaneda's claim before Defendants challenged it. On December 21, he sent an email to defense counsel explaining that he disagreed with CPT's decision that Castaneda's claim was invalid. Kennedy Suppl. Decl. Ex. 1. He explained that Castaneda "submitted a timely Claim Form, accurately checked the 'Yes' box, and accurately wrote and signed her true name, address, and last four digits of her social security number," thereby satisfying the claim requirements. *Id.* Defense counsel replied the next day that they would "look at this and circle back." *Id.* Kennedy represents that "at no time has Defendants' counsel contacted [him] to meet and confer" and only responded by adding a footnote to the motion indicating they did not concede the validity of her claim. Kennedy Suppl. Decl. ¶ 7.

[8] Norton initially advised the court of a likely dispute over the timeliness of Della Porta's claim in her reply brief filed the day before the fairness hearing. *See* Reply at 4. At that time, CPT had not made a determination about the claim. At the hearing, the court ordered CPT to issue its ruling by the following day and for any challenges to be filed within one week.

9

1   form to CPT on November 15, 2021 (before the December 6 deadline for responses). Kennedy
2   Suppl. Decl. Ex. 2 (Declaration of Rosa M. Della Porta ("Della Porta Decl.")) ¶ 2 [Docket No.
3   146-3]; *see* Della Porta Decl. Ex. 2 (Della Porta's claim form dated November 15, 2021).
4   However, she inadvertently switched the addresses on her envelope, thereby placing CPT's
5   address where her return address should go, and vice versa. *Id.* ¶ 2. The post office returned her
6   envelope to her on January 6, 2022. *Id.* ¶ 4. Della Porta then contacted Kennedy and CPT. *Id.* ¶
7   5. CPT instructed her to send them a copy of the envelope and claim form, which she did on
8   January 10. *Id.* ¶ 5. CPT determined that her claim form was "untimely but otherwise valid."
9   Declaration of William Kennedy Ex. 1 [Docket No. 148-1.] Class counsel thereafter challenged
10  CPT's ruling; Defendants did not file an opposition or statement of non-opposition. [Docket No.
11  1487.]
12          "A district court has discretion to allow late claims to a settlement fund." *Lemus v. H & R*
13  *Block Enters., LLC*, No. C 09-03179 SI, 2013 WL 3831866, at *2 (N.D. Cal. July 23, 2013) (citing
14  *In re Valdez*, 289 F. App'x 204, 206 (9th Cir. 2008)); *see In re Gypsum Antitrust Cases*, 565 F.2d
15  1123, 1128 (9th Cir. 1977). Multiple circuits had held that the court maintains an inherent
16  equitable power to "allow late-filed proofs of claim and late-cured proofs of claim." *In re*
17  *Cendant Corp. Prides Litig.*, 233 F.3d 188, 195 (3d Cir. 2000); *accord Burns v. Elrod*, 757 F.2d
18  151, 155 (7th Cir. 1985); *Zients v. LaMorte*, 459 F.2d 628, 630 (2d Cir. 1972); *cf. Silber v. Mabon*,
19  18 F.3d 1449, 1454 (9th Cir. 1993) (recognizing that "the district court has discretion to extend a
20  class member's time to opt out" of a class settlement). The Manual for Complex Litigation also
21  recommends that "[t]he court should allow adequate time for late claims before any refund or
22  other disposition of settlement funds occurs." *Manual for Complex Litigation (Fourth)* § 21.662
23  (2004). Courts regularly permit late-filed claims for "excusable neglect" or "good cause." *See*
24  *Silber*, 18 F.3d at 1455; *Gypsum*, 565 F.2d at 1128; *see also Valdez*, 289 F. App'x at 206 (noting
25  that district court permitted late-filed claims by claimants with "plausible excuses for not filing
26  timely"). The excusable neglect inquiry contemplates "the danger of prejudice to the [opposing
27  party], the length of the delay and its potential impact on judicial proceedings, the reason for the
28  delay, including whether it was within the reasonable control of the movant, and whether the

1    movant acted in good faith." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S.
2    380, 395 (1993).
3           The court overrules CPT's determination and permits Della Porta's claim.  The evidence in
4    her declaration shows that she mailed her claim well before the deadline for filing claims—
5    December 6, 2021.  Her error addressing the envelope was inadvertent, and she received her mis-
6    addressed envelope back after the deadline expired because of processing delays by postal service.
7    Promptly thereafter she contacted class counsel and provided a sworn affidavit testifying as to
8    what happened, evidencing her good faith attempts to fix the problem.  CPT expressly declared
9    her claim otherwise valid.  Good cause accordingly supports class counsel's request to permit
10   Della Porta's claim.

### B. Class Members' Response

"Courts have repeatedly recognized that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *De Leon v. Ricoh USA, Inc.*, No. 18-cv-03725-JSC, 2020 WL 1531331, at *11 (N.D. Cal. Mar. 31, 2020) (citation omitted); *Churchill Vill., L.L.C.*, 361 F.3d at 577.  "A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval." *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015).  The Procedural Guidance requires class counsel to provide the numbers of class members who opted out of the settlement, and class members who objected to the settlement

Here, no class members have opted out of the settlement.  Tran Decl. ¶ 15.  Nor has the clerk's office or the Claims Administrator received any objections to the settlement by the deadline.  *Id.* ¶ 16; *see also* Dec. 22, 2021 Report on Exclusions of Class Members [Docket No. 142.].  The lack of exclusions or objections "indicat[es] overwhelming support among the class members." *McLeod v. Bank of Am., N.A.*, No. 16-CV-03294-EMC, 2019 WL 1170487, at *3 (N.D. Cal. Mar. 13, 2019) (quotation omitted); *see also Schuchardt v. L. Off. of Rory W. Clark*, 314 F.R.D. 673, 686 (N.D. Cal. 2016) (final approval warranted in FDCPA and Rosenthal Act case where three percent of the class opted out and no class members objected).  This

overwhelmingly support from the class weighs strongly in favor of granting final approval.

### C. *Cy Pres* Award

A *cy pres* award is "a tool for 'distributing unclaimed or non-distributable portions of a class action settlement fund to the next best class of beneficiaries.'" *In re Google Inc. St. View Elec. Commc'ns Litig.*, 21 F.4th 1102, 1111 (9th Cir. Dec. 27, 2021) (quoting *Nachsin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011). "It is well established in this circuit that district courts may approve settlements with *cy pres* provisions that affect only a portion of the total settlement fund." *Id.* "*Cy pres* distributions must account for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members, including their geographic diversity." *Nachshin*, 663 F.3d at 1036.

The court previously acknowledged but did not rule on the parties' proposed *cy pres* distribution. *See* Prelim. Approval Order at 7, 17. The court finds that the *cy pres* proposal is fair and reasonable. The Agreement provides that the aggregate amount of any uncashed settlement checks shall be distributed to the Katherine & George Alexander Law Center. Agreement § 5.20. The Law Center is the clinical civil program for Santa Clara School of Law and a unit of Santa Clara University. Declaration of Scott Maurer ("Maurer Decl.") ¶ 3 [Docket No. 143-3.] The Law Center provides regular brief service advice clinics, including at the Santa Clara County Superior Court, and full representation to primarily low-income clients with consumer and/or debt issues. *Id.* ¶¶ 4-5. The most common issue for clinic clients at the superior court relate to collection activity by debt buyers. *Id.* ¶ 4. Other courts have previously approved the Law Center as an appropriate *cy pres* recipient in settlements in other consumer-debt related class actions. *See, e.g.*, *Newton v. Am. Debt Servs., Inc.*, No. 11-cv-3228-EMC, 2016 WL 7757521 (N.D. Cal. July 1, 2016); Maurer Decl. ¶ 6 (citing cases in state court).

The Law Center's mission to provide legal assistance to low-income individuals with consumer is sufficiently related to the subject at the heart of this case and the objectives of the FDCPA and the Rosenthal Act to protect consumers against abusive and deceptive practices by debt collectors. *See Turner v. Cook*, 363 F.3d 1219, 1226 (9th Cir. 2004); Cal. Civ. Code § 1788.1(b). The court accordingly finds that the Law Center is an appropriate *cy pres* recipient.

12

### D. Service Award

Norton also seeks a $7,000 service award for her work on behalf of the class. Defendants counter that she should receive "no more than $5,000," which is this district's presumptively reasonable service award amount. Opp'n at 3. The Agreement provided that she would apply for an award up to $7,000; Defendants would not oppose an award up to $2,000 and reserved their right to object to an award in excess of that amount. Agreement § 6.01.

"Incentive awards are payments to class representatives for their service to the class in bringing the lawsuit." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013). They are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general. Awards are generally sought after a settlement or verdict has been achieved." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009)

"In order to evaluate the reasonableness of the size of a service award, the Ninth Circuit looks to 'the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment.'" *Nevarez v. Forty Niners Football Co., LLC*, 474 F. Supp. 3d 1041, 1048 (N.D. Cal. 2020) (quoting *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947 (9th Cir. 2015)). Awards of $5,000 are presumptively reasonable in this district. *See, e.g.*, *id.*; *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 17-md-02777-EMC, 2019 WL 536661, at *9 (N.D. Cal. Feb. 11, 2019); *Villanueva v. Morpho Detection, Inc*, No. 13-cv-05390-HSG, 2016 WL 1070523 (N.D. Cal. Mar. 18, 2016). The Procedural Guidance requires that "all requests for incentive awards must be supported by evidence of the proposed awardees' involvement in the case and other justifications for the awards."

As Norton seeks a service award higher than the presumptively reasonable level, the court scrutinizes her request carefully. Norton recounts that she has been in frequent contact with her attorneys through the litigation. Declaration of Sonia Norton ("Norton Decl.") ¶ 6 [Docket No. 143-4.] She provided them with information and documents and met with her attorneys to prepare

13

1    responses to Defendants' discovery requests. *Id.* She had her deposition taken and spent several
2    hours preparing with her attorneys beforehand. *Id.* ¶ 3. She also attended two mediation sessions.
3    *Id.* ¶¶ 4-5. Norton does not quantify the amount of time that she spent working on the case.

4    Norton's work on behalf of the class appears typical of other named plaintiffs in these
5    cases. Other courts have awarded $5,000 or less to class representatives for performing similar
6    tasks. *See, e.g.*, *Villanueva*, 2016 WL 1070523, at *7 (awarding $2,500 where "[p]laintiff helped
7    class counsel investigate the claims, connected class counsel with putative class members, helped
8    respond to written discovery, sat for a full-day deposition, and attended a full-day ADR session.");
9    *In re Toys R Us-Delaware, Inc.—Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295
10   F.R.D. 438, 471 (C.D. Cal. 2014) ($5,000 where "plaintiffs expended reasonable efforts on the
11   litigation" including responding to "intrusive discovery" and "regular[] and consistent[]"
12   communication with class counsel over seven years).

13   Norton points to class settlements in wage-and-hour cases in which the courts, including
14   this court, awarded $7,500 service awards. *See, e.g.*, *Cruz v. Sky Chefs, Inc.*, No. C-12-02507-
15   DMR, 2014 WL 7247065, at *6 (N.D. Cal. Dec. 19, 2014) ($7,000 award); *Jacobs v. Cal. State*
16   *Auto. Ass'n Inter-Ins. Bureau*, No. C07-00362-MHP, 2009 WL 3562871, at *5 (N.D. Cal. Oct. 27,
17   2009) ($7,500 award). In employment cases, plaintiffs often "undertake a significant reputational
18   risk by bringing suit against their former employers." *Bellinghausen v. Tractor Supply Co.*, 306
19   F.R.D. 245, 287 (N.D. Cal. 2015). Norton does not establish that she suffered any financial or
20   reputational harm or retaliation for serving as class representative. *Compare*, *e.g.*, *McLeod v.*
21   *Bank of Am., N.A.*, 2019 WL 1170487, at *9 ($15,000 service award reasonable where plaintiff
22   believed that the defendant "terminated her employment in part due to her prosecution of the
23   subject lawsuit"); *Bellinghausen*, 306 F.R.D. at 287 (awarding $15,000 where plaintiff averred he
24   lost job opportunities and feared future reputational harm); *Cruz v. Sky Chefs*, 2014 WL 7247065,
25   at *6 (awarding $7,000 where plaintiff undertook a "financial risk" with the case).

26   Norton also points out that she is not eligible for any portion of the $50,000 fund reserved
27   for subclass members, even though she is a member of the subclass. Approval Mot. at 15; *see*
28   Agreement § 6.02 ("Under no circumstances, however, may Plaintiff receive any of the $50,000

14

that is to be distributed to Subclass Members."). At the hearing, Kennedy argued that because of her role as a class representative, she is foregoing her claim to a statutory award of civil penalties. However, under 15 U.S.C. § 1692k(2) expressly entitles a prevailing named plaintiff to a maximum of $1,000 in civil penalties and "such amount as the court may allow for all other class members, without regard to a minimum individual recovery." *See also* Cal. Civ. Code § 1788.30(b) (authorizing statutory damages for an individual up to $1,000). Norton therefore is entitled to only up to $2,000 by law; she did not waive her right to an additional payment because she assumed the role of class representation. The court is thus persuaded that Norton's eligibility for FDCPA-related claims does not justify an exceptional service award. *See also Harper v. L. Off. of Harris & Zide LLP*, No. 15-CV-01114-HSG, 2017 WL 995215, at *6 (N.D. Cal. Mar. 15, 2017) (FCDPA case in which named plaintiffs did not even seek service awards because the defendants agreed to pay $1,000 as statutory damages); *Schuchardt*, 314 F.R.D. at 691 (same).

The court values and recognizes Norton's service on behalf of the class resulting in an important settlement for judgment debtor. Nevertheless, her work does not justify deviation from the Ninth Circuit's presumptively reasonable standard of $5,000. Accordingly, the court awards a $5,000 service payment to Norton, to be issued in accordance with the procedures set forth in section 6.01 of the Agreement.

\* \* \*

Considering the above factors and the factors evaluated in the Preliminary Approval Order, the court finds that the Agreement is fair, adequate, and reasonable, and that the class members received adequate notice. Accordingly, the court grants Norton's motion for final approval of the class action settlement.

### IV. MOTION FOR ATTORNEYS' FEES

Next, the court addresses Norton's unopposed motion for attorneys' fees. Class counsel seek an award of $239,373.00 in attorney's fees and $2,053.58 in costs. The Agreement provided for an award "not to exceed $241.426.58," which is the total sum that class counsel requests here. Agreement § 7.01. Defendants agreed that they would not oppose a request for fees as long as the request did not exceed that amount. *Id.* The court evaluated this request at the preliminary

15

approval stage and ruled that class counsel's requested rates "appear to be within a reasonable range" and their hours billed "are not clearly unreasonable." Prelim. Approval Order at 21. Nonetheless, the court deferred ruling on the specific amount of attorneys' fees and costs until the final fairness hearing. *Id.*

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Also, "[i]n order to encourage private enforcement of the law . . . Congress has legislated that in certain cases prevailing parties may recover their attorneys' fees from the opposing side." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (quoting *Staton v. Boeing Co.,* 327 F.3d 938, 965 (9th Cir .2003)). The FDCPA is such a statute, as it authorizes that "any debt collector who fails to comply with its provisions is liable 'in the case of any successful action . . . [for] the costs of the action, together with a reasonable attorney's fee as determined by the court.'" *Id.* (quoting 15 U.S.C. § 1692k(a)(3)) (alterations in original). "The FDCPA's statutory language makes an award of fees mandatory." *Id.*

Even where, as here, the parties' agreement provides for attorneys' fees, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable." *Bluetooth*, 654 F.3d at 941. The "lodestar method" is appropriate in class actions brought under fee-shifting statutes." *Camacho*, 523 F.3d at 978 (9th Cir. 2008); *see Harper*, 2017 WL 995215, at *6 (N.D. Cal. Mar. 15, 2017) (calculating attorneys' fees in a FDCPA and Rosenthal Act class settlement using the lodestar method); *Schuchardt*, 314 F.R.D. at 688 (same). The court previously ruled that the lodestar method is appropriate here. Prelim. Approval Order at 20.[9]

"The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable

---

[9] Plaintiffs seek attorneys' fees apart from the class members' recovery. *See* Agreement § 7.01. Although the statutory fee award and forgiveness of court costs is not distributed on a claims-made basis, the lodestar method is nevertheless appropriate since most of the monetary relief is based on the number of claims submitted. The other method of calculating attorneys' fees, as a percentage of recovery from the common fund, is inappropriate here. *See also Schuchardt*, 314 F.R.D. at 688.

16

hourly rate for the region and for the experience of the lawyer." *Bluetooth*, 654 F.3d at 941. "Though the lodestar figure is presumptively reasonable, the court may adjust it upward or downward by an appropriate positive or negative multiplier reflecting a host of "reasonableness" factors." *Id.* at 941-42 (internal citations and quotations omitted). "Foremost among these considerations, however, is the benefit obtained for the class." *Id.*

### A. Reasonable Hours

First, the court "must determine a reasonable number of hours for which the prevailing party should be compensated." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). "The number of hours to be compensated is calculated by considering whether, in light of the circumstances, the time could reasonably have been billed to a private client." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). The party seeking the fee award bears the "the burden of submitting billing records to establish that the number of hours it has requested are reasonable." *Gonzalez*, 729 F.3d at 1202.

Class counsel testifies that it billed 541.77 hours on this matter, divided between 438.7 hours by attorney William E. Kennedy and 103.07 hours by three attorneys at HERA. Fees Mot. at 9; Declaration of William E. Kennedy ("Kennedy Fees Decl.") ¶ 5; Declaration of Gina Di Giusto ("Di Giusto Decl.") ¶ 22 [Docket Nos. 139, 140.] Class counsel categorized their hours spent on different stages of the case ranging from conducting the initial investigation to preparing this fees motion. Kennedy Fees Decl. ¶ 5; Di Giusto Decl. ¶ 22. They do not seek reimbursement of certain administrative costs. Kennedy Fees Decl. ¶ 3; Di Giusto Decl. ¶¶ 21, 24.

Class counsel's chronological summary of their work is sufficient to evaluate their hours worked. *See Schuchardt*, 314 F.R.D. at 690. ("The Court may rely on summaries of hours worked, and contemporaneous billing records are unnecessary."). As the court previously observed, while class counsel billed a large number of hours, this case has involved extensive litigation, including two motions to dismiss, Defendants' motion to amend its answer, class certification (and opposing Defendants' subsequent petition to appeal the class certification order), Norton's deposition, two mediation sessions, and multiple rounds of settlement negotiations and motions for preliminary approval. Although class counsel did not provide discrete time records,

17

1    there is no indication that any of the hours billed on each category of work is redundant,

2    duplicative, or excessive. *See Gonzalez*, 729 F.3d at 1203. HERA's attorneys further testified that

3    they removed any duplicate entries. Di Giusto Decl. ¶ 24. Accordingly, the court finds that class

4    counsel's hours billed are reasonable.

### B. Reasonable Rate

Next, the court "must determine a reasonable hourly rate to use for attorneys and paralegals in computing the lodestar amount." *Gonzalez*, 729 F.3d at 1205. "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Camacho*, 523 F.3d at 979. The court must rely on the prevailing rate in the community "for similar work performed by attorneys of comparable skill, experience, and reputation." *Id.* (quoting *Barjon v. Dalton*, 132 F.3d 496, 502 (9th Cir. 1997)). The fee applicants must testify that "the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). Their "affidavits . . . and rate determinations in other cases are satisfactory evidence of the prevailing market rate." *Id.* (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir.1990)).

Kennedy requests a $600 hourly billing rate. Kennedy Fees Decl. ¶ 6. He has over twenty-nine years of relevant experience and has practiced law since 1990. *Id.* ¶ 11. Virtually all of his cases involved consumer protection laws, including debt collection matters. *Id.* ¶ 11. Kennedy has served as co-counsel in at least ten certified class actions, four putative class actions that reached settlements, and many other cases resulting in published decisions in state or federal court. *Id.* ¶¶ 11-14.

Kennedy does not provide an estimate of the reasonable prevailing hourly rate for attorneys of his experience level in the San Francisco Bay Area. However, his rate falls well within the prevailing hourly rates for civil rights attorneys here. *Gonzales v. City of San Jose*, No. 13-CV-00695-BLF, 2016 WL 3011791, *4 (N.D. Cal. May 26, 2016) (surveying cases). At least one court has previously confirmed a $600 hourly rate in a FDCPA case for an attorney commensurate with Kennedy's experience and subject-matter expertise. *See, e.g.*, *Price-Pauline*

1    *v. Performant Recovery, Inc.*, No. 14-cv-850-JD, 2016 WL 310268, at *2 (N.D. Cal. Jan. 26,
2    2016).  Also, over four years ago, another court in this district approved a fee award for Kennedy
3    at a $550 hourly rate.  *Castillo v. Nationstar Mortg. LLC,* No. 15-CV-01743-BLF, 2017 WL
4    6513653, at *4 (N.D. Cal. Dec. 20, 2017).  State courts in Santa Clara County and Napa County
5    previously approved a $475 hourly rate for Kennedy in 2012 and 2013.  *See* Kennedy Fees Decl.
6    Ex. 3-4.  In light of these decisions rendered over several years ago and the length of this lawsuit,
7    a normal adjustment of rates to reflect their present value is warranted.  *See Welch v. Metro. Life*
8    *Ins. Co.*, 480 F.3d 942, 947 (9th Cir. 2007) ("District courts have the discretion to compensate
9    plaintiff's attorneys for a delay in payment by . . . using the attorneys' historical rates and adding a
10   prime rate enhancement.").  The court therefore finds that Kennedy's billing rate is reasonable.

11   HERA's attorneys also request a billing rate of $400 for Gina Di Giusto, $475 for Noah
12   Zinner, and $400 for Natalie Lyons.  Di Giusto Decl. ¶¶ 9, 16, 21.  Di Giusto has practiced law
13   since 2013 and has substantial experience litigating consumer protection cases in federal and state
14   court.  *Id.* ¶ 5, 8.  Zinner has practiced since 2006 and also has substantial experience in consumer
15   protections, including serving as primary counsel in an important decision on fair debt collection
16   on mortgage loans.  *Id.* ¶¶ 13-14.  Lyons has practiced since 2013 and has litigated several class
17   actions.  *Id.* ¶¶ 19-20.  Another court in this district previously awarded attorneys' fees to Di
18   Giusto and Zinner based on rates of $350 and $475, respectively, in a FDCPA class action.
19   *Hanson v. JQD, LLC*, No. 13-cv-5377-RS, slip op. at 1 (N.D. Cal. April 27, 2017) (ECF No. 92);
20   *see id.* (ECF No. 83-2) (declaration setting forth Zinner's and Di Giusto's billing rates).  HERA's
21   attorneys' billing rates are in line with the prevailing rates for attorneys in this community of their
22   experience and subject-matter expertise.  The court therefore finds that the rates for Di Giusto,
23   Zinner, and Lyons are reasonable.

24   **C.  Lodestar Calculation**

25   Based on the billing hours and rates provided above, class counsel—and, independently,
26   the court—calculates its lodestar amount as $305,595.50.  *See* Kennedy Fees Decl. ¶ 5; Di Giusto
27   Decl. ¶¶ 22, 25.  "After determining the lodestar, the Court divides the total fees sought by the
28   lodestar to arrive at the multiplier."  *Schuchardt*, 314 F.R.D. at 690.  Because the total fees

requested are less than the lodestar, the calculation results in a negative multiplier, meaning that class counsel reduced their fees. "[C]ourts view self-reduced fees favorably." *Id.* (citing cases). The negative multiplier "strongly suggests the reasonableness of [a] negotiated fee" in this case. *Rosado v. Ebay Inc.*, Case No. 12-cv-04005-EJD, 2016 WL 3401987, at *8 (N.D. Cal. June 21, 2016).

For the foregoing reasons, the court finds that class counsel's request for attorneys' fees is reasonable.

### D. Costs

The FDCPA and the Rosenthal Act authorize an award of costs. 15 U.S.C. § 1692k(a)(2)(3); Cal. Civ. Code § 1788.30(c). Class counsel requests an award of $2,053.58 in costs and expenses. Kennedy Fees Decl. ¶ 10. These costs included filing, service of process, discovery, and court records fees. *Id.* The court finds that these costs are reasonable. The motion for attorneys' fees is therefore granted.

## VI. CONCLUSION

For the reasons set forth above, the court grants Norton's motion for final approval and motion for attorneys' fees and costs. Class counsel is awarded **$239,373** in fees and **$2,053.58** in costs. Norton is awarded **$5,000** as an incentive award.

Within **21 days** after the final distribution of settlement funds (including to the cy pres recipient) and payment of attorneys' fees, class counsel shall file a **Post-Distribution Accounting** in accordance with the Procedural Guidance for Class Action Settlements, *available at* https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements. The Post-Distribution Accounting must contain all information listed in the Guidance, and shall be filed with the court and posted on the Settlement Website.

**IT IS SO ORDERED.**

Dated: February 24, 2022



Donna M. Ryu
United States Magistrate Judge